The State of Nevada *v.* Chapman.

# THE STATE OF NEVADA, Respondent. *v.* J. E. CHAPMAN, Appellant.

CRIMINAL LAW—EVIDENCE TO CORROBORATE ACCOMPLICE. Where on appeal in a criminal case it was claimed that certain evidence given for the purpose of corroborating that of an accomplice was not sufficient: *Held*, that the question before the Supreme Court was not as to the weight of the evidence, but as to whether it was corroborative within the meaning of Sec. 365 of the Criminal Practice Act.

INDICTMENT—COUNTS SETTING OUT OFFENSE IN DIFFERENT FORMS. Where an indictment for robbery contained two counts, the only difference being that one charged the property taken as that of Wells, Fargo & Co, and the other as that of their messenger in custody thereof at the time: *Held*, authorized under Sec. 238 of the Criminal Practice Act, and not amenable to the objection of charging more than one offense.

WAIVER OF OBJECTIONS TO AFFIDAVITS FOR CONTINUANCE. Where in a criminal case, on motion for continuance on the ground of absence of witnesses, no objection was made that the affidavits did not set forth the materiality of their testimony; but it appeared that the Court assumed its materiality: *Held*, that it would be unfair to allow the objection to be made for the first time in the Supreme Court.

CONTINUANCE WITHIN DISCRETION OF COURT. A continuance in a criminal case is within the discretion of the court, and unless there is an abuse of its discretion, its action will be sustained.

DILIGENCE TO PROCURE CONTINUANCE. Affidavits for continuance in a criminal case on account of the absence of witnesses for defense should show diligence in attempting to procure their attendance, that at least reasonable means had been taken to ascertain their whereabouts, and that there was some reasonable probability that their attendance could be procured within a proper time.

CHALLENGE TO JUROR MUST SPECIFY GROUNDS. Where the only specification of ground of challenge to a juror was "for cause": *Held*, entirely insufficient, and that on appeal no objection would be entertained.

ACCESSORY BEFORE THE FACT SAME AS PRINCIPAL. An accessory before the fact to a crime, though not present and in fact out of the State at its commission, may under our statutes (Stats. 1861, 57, Sec. 10; 462, Sec. 252,) be charged in an indictment, and tried, convicted and sentenced in all respects as a principal.

ROBBERY BY ABSENT PERSON. Where several persons combined to rob Wells, Fargo & Co's stage, in Washoe County; and one named Chapman, in pursuance of the combination, went to San Francisco and telegraphed when a large amount of money would be on the stage, and the others did the robbery; *Held*, that Chapman was an accessory before the fact, and as such properly charged and convicted with the others as having committed the robbery in Washoe County.

The State of Nevada *v.* Chapman.

VENUE IN TRIAL OF ACCESSORY. There seems to be an incongruity between Sec. 91 of the Criminal Practice Act, which requires an accessory before the fact to be tried where his offense is committed, and Sec. 252, which places him on the same plane with the principal; but the former clearly does not apply in a case where the acts of the accessory are done out of the State.

DOCTRINE OF AGENCY AS TO ACCESSORIES BEFORE THE FACT. An accessory before the fact aiding, abetting or counselling a crime, is, under our laws, to be treated as a principal; in the same manner as in the civil law what a principal does by an agent he is to be regarded as doing by himself.

INDICTMENT AGAINST ACCESSORY BEFORE THE FACT. In an indictment against an accessory before the fact, it is not necessary to state the special act which the accused may have done in active or passive aid of the ultimate act; but only the ultimate act itself, the same as in case of a principal.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The defendant, after his conviction, was sentenced to imprisonment in the State Prison for the term of eighteen years.

The charging part of the indictment, which is commended in the following opinion, was as follows: " That A. J. Davis, E. B. Parsons, J. C. Roberts, James Gilchrist, Tilton Cockerell, R. A. Jones, J. E. Chapman and John Squires, on the fifth day of November, A.D. 1870, and before the finding of this indictment, at Washoe County, in the State of Nevada, in and upon one Frank C. Minshull, express messenger of Wells, Fargo & Co, a corporation organized under the laws of the Territory of Colorado and doing business in the State of Nevada, did then and there willfully, feloniously, and violently make an assault, and him, the said Frank C. Minshull, express messenger as aforesaid, in bodily fear and danger of his life willfully, feloniously and violently did put; and gold and silver pieces, coins of the United States of the denominations of twenties, tens and five dollar pieces and fifty-cent pieces, and of the aggregate value of forty-one thousand, four hundred and thirty-five dollars of the moneys belonging to said Wells, Fargo & Co., a corporation organized under the laws of the Territory of Colorado, from the person and against the will of the said Frank C. Minshull, express messenger as aforesaid, and without the consent of Wells, Fargo & Co. aforesaid, then and there willfully, feloniously and violently did steal, take and carry away; contrary to the form of the

statute in such case made and provided, and against the peace and dignity of the State of Nevada."

*Thomas E. Haydon,* for Appellant.

I.   All of the acts attempted to be proven against Chapman constitute no public offense under the laws of this State ; all his acts being those of an accessory before the fact, and all having transpired in the State of California. (*The State* v. *Wyckoff,* 2d Vroom, 31 N. J., 68 ; *State* v. *Moore,* 6th Foster, N. H., 451 ; *State* v. *Knight,* 1 Taylor, 3 N. C., 44.

II.   A person guilty only as an accessory must be specially charged as such, and cannot be convicted as a principal. (*People* v. *Campbell,* October Term, 1870, Cal. ; *People* v. *Trim,* Jan. Term, 1870, Cal. ; *People* v. *Swartz,* 32 Cal. 160 ; 1 Chitty, Crim. Law, 271 ; Wharton's Precedents of Indictments, 97 ; *State* v. *Snow,* 4 Dutcher, 519.)

III.   The Court should have granted the continuance. (*People* v. *Dodge,* 28 Cal. 449.)

IV.   The evidence of the accomplice Jones was entirely uncorroborated on the only points that attached any criminality to Chapman : first, on his agreement to the conspiracy and knowledge that any robbery was to be committed ; second, that there was any criminal covert meaning to an apparently innocent telegram.

V.   An accessory is to be punished in the county where his offense was committed, notwithstanding that the principal offense was committed in another county. (Stats. 1861, 445, Sec. 91.) It is therefore necessary that the acts or facts of the accessory's participation should be shown, in order that it may be known in what county he should be tried ; hence, it appears that the Legislature did not intend to abolish all distinction between principals and accessories, nor to subvert the fundamental rule that the indictment shall contain " *a statement* of the acts constituting the offense in ordinary and concise language."

VI.   The robbery was not committed through any innocent or guilty agent of Chapman, nor by any other means proceeding directly

from him ; his part of the agreement was merely to advise Davis, Cockerell and Jones when, by *committing* the offense, they could acquire a large *booty*. The most that can be said is, that while not present, but absent in California, he *advised* and *encouraged* Davis, Cockerell and Jones to commit the offense by advising them of its probable profitable results. He was at most an accessory before the fact out of the State ; and as our law has not prescribed it any offense for any *accessory* out of the jurisdiction of this State to *advise and encourage* the commission of an offense within the State, the conviction cannot stand.

*Robert M. Clarke*, for Respondent.

I. The affidavit for continuance was insufficient, and no abuse of discretion being shown, none will be presumed. The affidavit did not show the materiality of the witnesses, nor the exercise of legal diligence to procure their attendance. It was not diligence to issue subpœnas for witnesses residing beyond the reach of process ; nor was it diligence to write Dr. Egery or Mrs. Sutton as to whereabouts of persons without writing the persons themselves ; nor did it appear where the witnesses were, nor whether defendant would be able to produce them. (33 Cal. 641.)

II. Defendant was properly indicted and tried where the crime was committed, notwithstanding his absence in California at the time. (31 Cal. 114 ; 1 Wheaton, Sec. 115, 154, 278 ; 3 Denio, 190, 206, 610 ; 7 S. & R. 469, 477 ; 1 Comstock, 173 ; 22 Eng. Law & Eq. 607.)

III. The indictment was proper. At common law there are no accessories in treason or misdemeanor, and an indictment charging either offense is supported by proof that defendant counselled or advised, or aided and abetted in the commission of the crime. In this State, the distinction between principal and accessory before the fact in felony is abolished by statute ; and the rules of pleading and evidence applicable to treason and misdemeanor at common law are consequently applicable to felony.

IV. The California case of *People* v. *Campbell* is against the whole current of authority, and the reasoning by which the conclusion arrived at is attempted to be enforced is unsound.

V.  The offense is robbery.  The acts constituting it are the "felonious and violent taking of money from the person of Frank C. Minshull," etc.  These acts are stated in the indictment.  It is generally sufficient to charge the acts or facts of the crime in the language of the statute.  (1 Bishop Criminal Procedure, Sec. 359, and cases cited, note 1.)

By the Court, WHITMAN, J.:

The appellant was jointly indicted with others, and convicted of robbery.  He alone appeals, upon various grounds, which will appear in the course of this opinion.

On the morning of the 5th November, 1870, the cars of the Central Pacific Railroad Company of California were stopped in Washoe County, in the State of Nevada, by the defendants named in the indictment other than the appellant, and the treasure-box of Wells, Fargo & Co. broken open and robbed of $40,000.  Appellant was not personally present; but was in San Francisco, California, where, it is contended by the State, he had gone in pursuance of a previous agreement, to telegraph from thence to his co-defendants, or some of them, when a large freight of treasure started for the use of the mines at Virginia City, in the State of Nevada.  One of these testifies fully on this point, and another to some extent; but appellant claims that such evidence is uncorroborated, and that therefore a conviction was improperly had ; relying upon the statutory provision as follows :

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, or the circumstances thereof." (Stats. 1861, 473, Sec. 365.)

Upon review of the transcript, it appears that there was some evidence tending to corroborate the accomplices, as by statute required.  Several witnesses, not defendants, thus testify.  Roberts and Evans both place appellant in company with three of the defendants, (one of whom is the witness who gave full evidence of the agreement) at the time and place testified to, and Roberts in addition swears that the witness, accomplice, and appellant came in a wagon together.  Newby swears that subsequent to the time

above referred to, the appellant was in company with one Squiers, a defendant, in the night time, in San Francisco. Ladd testifies to the sending of a telegram as agreed by appellant, over an assumed name, to the accomplice witness. Arthurs says that the key to this telegram produced at the trial was in the handwriting of appellant. Burke and Edwards testify that appellant denied the sending of this telegram upon its exhibition to him, after his arrest. How much the weight of this evidence may be, is not for this Court to decide. It is evidence tending to the statutory corroboration; considered by the jury sufficient; and therefore the objection of appellant must fail.

The indictment charges the robbery in two counts, the only difference being, that in one the money is charged as being the property of Wells, Fargo & Co., and in the other it is laid in the messenger having at the time special custody thereof. This appellant insists is a charging of more than one offence in the same indictment. It would be difficult, if not impossible, to frame a better indictment than the one at bar. In these days of peculiar pleading, it is absolutely refreshing to read such an one. The criminal statute of this State permits the double count. "The indictment shall charge but one offense, but it may set forth that offense in different forms, under different counts." (Stats. 1861, 460, Sec. 238; *People* vs. *Thompson*, 28 Cal. 214.)

Appellant applied for a continuance, upon an affidavit in which he set forth that Joseph Steinhart, Samuel Brown, Dr. Wm. Jones, R.D. Sutton, one Gilmore, and one Reid, were all material witnesses, without whom he could not safely proceed to trial. Their evidence is not detailed, and the averment as to its materiality is, to say the least, weak; and it is consequently urged by respondent that the application was, or might have been, properly denied upon that ground; but it is evident from the record that the Court below assumed the materiality of the testimony, excused the appellant from stating the same at length, and decided the motion upon other points. To take a different course now would be unfair, and appellant might properly complain that he had been deceived, to his injury. To ascertain whether the ultimate ruling was correct, requires a further examination of the affidavit.

Steinhart was produced upon the trial, and examined by appellant; so as to this witness no harm could have happened to him by the denial of his motion.

The application was made December 12th, 1870. Appellant states in his affidavit, " That in order to learn the whereabouts of said Reed and Gilmore, affiant wrote to Dr. A. J. Egery, on the twenty-eighth day of November, A. D. 1870; and that he and his counsel have made, as affiant knows of his own knowledge on his own part, and is informed and believes, on the part of his counsel, diligent inquiries for the present place of abode, or sojourn, of said Samuel Brown, ever since this case has been set for trial. * * That said Dr. Jones and A. D. Sutton reside in California; said Jones in San Francisco, and said Sutton in Nevada City, in California; that on the third day of December, A. D. 1870, affiant wrote to Mrs. A. D. Sutton, requesting the attendance of said A. D. Sutton at this trial; that on the eighth day of December, 1870, he caused subpœnas for all of the above named witnesses, and others his witnesses, to be placed in the hands of the sheriff of this county, and that after due diligence said sheriff did not find any of the above named witnesses in this county. That said Samuel Brown has been a resident of Washoe County for two years or more last past, until about June, A. D. 1870, when he went away temporarily, driving a team for Jerry Gantz, making a circuit with a circus company, intending to return this winter. That affiant saw said Samuel Brown on the morning of the seventh of November, A. D. 1870, in San Francisco, and for several days before that time; and he was talking and told affiant that he should return to Reno, Washoe County, and winter there with his acquaintances; but notwithstanding diligent inquiries, affiant has not been able to learn where said Brown is, from any of his acquaintances about Reno; and has not been able to learn of the present whereabouts of Jerry Gantz, who thus employed said Brown, though said Gantz has been daily expected back at Reno by his friends there. That said Brown was only temporarily sojourning at San Francisco. That said Reed has also left San Francisco, and also said Gilmore. That the latter was a resident of Pine Grove, in Esmeralda County; was waiting at San Francisco the prospecting of some mines in Placer

County, which if favorable he intended to winter there; otherwise to return to Pine Grove, Nevada."

Now, unless the District Court abused its discretionary power in refusing the continuance, the ruling must be sustained. While, perhaps it might be held that the granting a continuance upon such a showing would not be such an abuse of discretion as to warrant a reversal of the order, still the argument that way is much stronger than its reverse. While the rights of a defendant are to be carefully guarded, still the State has rights also; and to grant a continuance upon an affidavit like this one quoted, would be to go a long way toward trifling with justice.

The diligence shown is of the slightest. The subpœna to the sheriff was, under the circumstances, an unmeaning form; and with regard to Reed and Gilmore, it may fairly be said that none is shown, as the writing to Dr. Egery amounts to nothing at best, and might perhaps be the very cause of their mysterious disappearance; and why Mrs. Sutton should have been addressed rather than her husband, who was the person sought, is unexplained. But waiving the question of diligence, nothing appears in the affidavit from which the District Court could infer that the residences of the witnesses, or any of them, were known to the affiant; or that there was a reasonable legal probability that their attendance could be had within any proper time; indeed, the presumptions are all the other way.

There is no method of compelling the attendance, or taking the testimony of witnesses out of the State in criminal cases; and it devolved upon the appellant herein to present some satisfactory showing that he had reason to believe his desired witnesses could be produced at some early day, before the Court would have been justified in granting him delay. (*People* v. *Francis*, 38 Cal. 183.) The continuance was therefore properly denied.

One Twaddle was examined as to his competency as a trial juror, and was challenged by appellant as the record shows, "for cause." There is no further specification of the ground of challenge, and it was overruled; whether for this reason or not is immaterial. The challenge was entirely insufficient under the statute, and that fact relieves this Court from the consideration of the questions, whether

the District Court decided and ruled upon the ground that the juror was not disqualified by reason of any of the statutory causes; and whether, so deciding, it was or was not correct. The disposal of these objections against the appellant clears the way for others going more entirely to matter of greater final importance.

The indictment charged all the defendants as principal actors. The evidence, if taken as true, proves the following state of facts, as to appellant: That in Sierra County, in California, on some day between the tenth and twenty-second days of October, 1870, he agreed with Jones, Davis and Cockerell, three of his co-defendants, that on or about the fourth day of November, then next to ensue, the express car of Wells, Fargo & Co. should be robbed of the treasure, about that time expected to be on it. That he would go to San Francisco, watch the office of Wells, Fargo & Co., and in an agreed cipher telegraph to Jones at Reno, in the State of Nevada, a point near where the robbery was to be attempted, when the large monthly shipment of coin for the use of the mines in Virginia City and vicinity should be made. That appellant sent the telegram which Jones received, and in connection with the other defendants, acted upon, and as has been before stated, on the morning of the fifth of November, 1870, robbed the express car of Wells, Fargo & Co., of forty thousand dollars. That on the ninth of the month last named, appellant was arrested at the Capital House, in Reno, the place where the telegram before referred to was agreed to be, and was, sent by him to Jones.

Appellant urges, first: " That any and all of the acts attempted to be proven against him constitute no public offense under the laws of this State, all his acts being those of an accessory before the fact, and all having transpired in the State of California." To support this proposition, cases are cited which would be in point and of great weight, had not the rule at common law been modified by the statute law of this State. " An accessory is he or she who stands by and aids, abets or assists; or who, not being present, aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime; he or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly." (Stats. 1861, 57, Sec. 10.) " No dis-

tinction shall exist between an accessory before the fact and a prin-
cipal, or between principals in the first and second degree, in
cases of felony; and all persons concerned in the commission of a
felony, whether they directly commit the act constituting the
offense or aid and abet in its commission, though not present, shall
hereafter be indicted, tried and punished as principals." (Stats.
1861, 462, Sec. 252.)

Now, by these statutes appellant and his co-defendents are
placed upon the same plane. If the latter are guilty, so is he. If
he cannot be punished, neither can they. He is to be deemed a
principal actor. The act was committed in the State of Nevada;
he is deemed and considered a participant therein, though not act-
ually present, and is to be punished accordingly: he and all the
others, co-defendants, each and every of them, committed the crime
of robbery (if any was committed) in Washoe County, in the State
of Nevada. Each and all are equal in guilt; each and all com-
mitted the same identical crime in grade and substance: so says
the law by which this case must be governed. Here, this statute
differs from the one disapproved in a case cited by counsel for ap-
pellant: there, the Legislature of North Carolina had passed an Act
making the counterfeiting of the bank notes of that State by the
residents of neighboring States, in such States, a crime against
the State of North Carolina, and authorizing trial, conviction and
punishment as if the offense had been committed within the limits
of North Carolina; and the Court very properly held that the de-
fendant in such a case could not be punished in North Carolina
for an act not done there. (*State* v. *Knight*, 3 N. C. 45.)

Counsel for appellant refers also to this other section of the
statute last quoted: " In the case of an accessory before or after
the fact in the commission of a public offense, the jurisdiction shall
be in the county where the offense of the accessory was committed,
nothwithstanding the principal offense was committed in another
county "; (Stats. 1861, 445, Sec. 91) from which it is argued that
it was not intended by the Legislature to abolish the common law
between an accessory before the fact and a principal. There does
appear to be some incongruity between the different sections cited;
but the practical application of the last one quoted does not arise in

22

this case, and it is hardly worth while to spend time in the attempt to reconcile a conflict, if conflict there be, which may, perhaps, never in reality occur. Suffice it to say for the present, that the sections first hereinbefore quoted do apply to the case in hand, and are clear and conclusive upon the point under review.

Counsel contends in the second place, that " a person guilty only as an accessory must be specially charged as such, and cannot be convicted as a principal." It might be enough to say: admit the proposition, and it proves nothing material to the case; as the statutes of this State recognize no such criminal; but as the Supreme Court of California, upon identical statutes, have held differently, it will probably be more satisfactory to make a more thorough examination of the proposition. The other cases cited demand no attention, because based either upon the common law, or differing statutes. So to the California case. Say the Supreme Court of that State: " In the opinion delivered in this case at the present term, and in the case of the *People* v. *Trim*, decided at the last January term, we held that though an accessory before the fact, under the statutes of this State, may be tried, convicted and punished as principal, nevertheless, the indictment against him must specify that he aided and abetted the crime, and must state in what particular manner he aided and abetted it; and that if the indictment charge that he in person perpetrated the crime, it will not be sustained by proof that he only aided and abetted it, or in other words, was an accessory before the fact. Since these decisions were rendered, our attention has been specially called to section two hundred and fifty-five of the Criminal Practice Act, under the belief that it may have escaped our observation; and in order to avoid all misapprehension, in respect to an important point in practice, we deem it proper to say that we find nothing in that section inconsistent with the conclusion already announced. The sole purpose of that section was to abolish all distinction, in cases of felony, between an accessory before the fact and the principal, in respect to the grade of the offense, and to its punishment. The accessory is to be indicted, tried and punished as the principal; nevertheless, the particular acts which establish that he aided and abetted the crime, and thus became in law the principal, must be stated in the

indictment. When these facts are averred and proved, the law considers the accused to be the principal, and condemns him accordingly. But section two hundred and thirty-seven of the Criminal Practice Act provides that the indictment shall contain " a statement of the acts constituting the offense "; and this important requirement would be wholly ignored if an indictment which alleges that the defendant in person committed the crime would be supported by proof that he only aided and abetted it. It is a fundamental principle in criminal jurisprudence, that the accused is entitled to be informed by the indictment of the particular acts which he is alleged to have committed, as constituting the offense; and if he, in fact, only aided and abetted the crime, the fact must be so stated in the indictment. He then comes to the trial with a knowledge of the acts which are imputed to him. But, on the opposite theory, the indictment would charge him with one act, or series of acts; and he might be convicted on proof of a wholly different act, or series of acts. We can attribute no such unreasonable result to our Legislature on the subject. We think the true rule on this subject is laid down in *People* v. *Swartz,* 32 Cal. 160; *People* v. *Campbell,* Oct. Term, 1870.

It is claimed by counsel for respondent, that prior cases in California—the law when the statutes of the State of Nevada were adopted—are in conflict with the case just cited; but they are not clearly so on the precise point at issue; but the argument of counsel upon principle and reason is conclusive.

Counsel says, and so is the law, that at common law, in the highest and in the lowest crimes, high treason and misdemeanor, there are no accessories; that an indictment charging a defendant as principal actor in treason or misdemeanor is supported by proofs that defendant counselled or advised, or aided or abetted in the commission of the crime.

Says Mr. Bishop: " The doctrine of the books, let us remember, is that in treason there are no accessories; but that they who in felony would be such, are in treason principal offenders. Let us see what this doctrine implies, as concerns accessories before the fact. It implies the right of the prosecuting power to treat them as having done the act. The indictment against them may mention

the thing as performed through the agency of another; or it may omit the matter of agency, and leave the prosecutor producing the proofs to rely on the legal rule that what one does by an agent is to be regarded as done by himself; either form of allegation accord-. ing with the established practice in all other pleadings civil and criminal. That such is the only true meaning which this doctrine can have is plain; because the distinction between the accessory before the fact and his principal, in felony, is merely in the form of the allegation, and in the order of the trial; while, as we have seen, the accessory would be a principal but for a technical rule of the old common law, introduced therein by a blunder, against sound reason, and against the general teachings of the common law itself in both civil and criminal jurisprudence. (1 Bishop Crim. Law. Sec. 624. See also Secs. 616 and 627.)

It must be confessed, that no greater particularity in setting forth the acts or facts constituting a crime, is required by the statutes of the States of California or Nevada, than at common law. If, then, it would have been sufficient at common law, to have charged an accessory to a felony as principal, but for the technical rule which has been abrogated by those statutes, it necessarily follows, that under such statutes such pleading is good. The reasoning of the California case quoted, if carried to its logical conclusion, would result in a recapitulation of the evidence relied on for a conviction in the indictment. Take for instance this case, leaving appellant for the moment at one side. Several parties were present at the commission of a robbery; one did one act, one another, and so on. Does the law require a recital of the separate acts of each person? Certainly not; that is a matter of proof.

The offense is robbery. The general act constituting such offense necessary to be charged, is the "felonious and violent taking of money, goods, or other valuable thing, from the person of another by force or intimidation." (Stats. 1861, 66, Sec. 60.) The particulars required to be stated are, the time, place, property, and person from whom the same is taken. Not the special act which any one accused may have done in active or passive aid of the ultimate acts; but the *ultimatum.* If in this case Squiers uncoupled the cars; Davis held a gun; Cockerell gagged the messenger, and others did

other acts; yet it is not necessary to state these doings; that would not be claimed by any criminal lawyer; because the mere aiding presence constitutes, in the eye of the law, a commission of any and everything which, when combined, produce the consummation.

So the statute referred to, wiping out the technical distinction of the common law in felonies, says, that one aiding, abetting, assisting, advising, or encouraging, though not present, shall be deemed and considered as principal, and present and punished accordingly; precisely as at common law such an one was treated in case of high treason or misdemeanor; that, as there, no distinction shall "hereafter" from the date of the statutes in the States named, exist, between an accessory before the fact and a principal; and that all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, shall be indicted, tried and punished, as principals.

It would be difficult to conceive of language more clearly abolishing the distinction of the common law; and so say the Supreme Court of California. This premise admitted, it would seem that the only logical conclusion must be, that as to the principal actors at a felony, of whom the accessory before the fact is one, only ultimate acts need be stated; and that with regard to these, it is generally sufficient to charge the acts or facts of the crime in the language of the statute, supplying in every case the particulars as before suggested. In any event, no rule of pleading either requires or permits the recital of personal or individual acts, as distinguished or subdivided from the totality constituting the crime sought to be charged; such acts are to be proved as the basis, whence results the legal conclusion of guilt. So, when a robbery is charged under the statute in question, proof that one held a gun; that one took the property; that one, not present, had theretofore in any manner aided, advised, or encouraged the final act, would necessarily, against all as well as either, support the legal conclusion of a crime committed. These remarks dispose of all that is substantial in the points presented and urged upon this appeal, which is, as has been endeavoured to be shown, not well taken.

The various orders of the District Court and its judgment are affirmed.