THE STATE OF NEVADA, RESPONDENT, v. TILLMAN HILBISH AND EDDIE DAVIS, APPELLANTS.

No. 3288

January 3, 1940.                    97 P. (2d) 435.

*J. W. Dignan,* for Appellants:

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, and *Merwyn H. Brown,* District Attorney, for Respondent:

## OPINION

By the Court, DUCKER, J.:

The appellants were convicted of grand larceny and have appealed from the judgment and order denying

their motion for a new trial. They will sometimes be referred to hereinafter by their names. The errors assigned are as follows:

"1. The court erred in failing to assign counsel to represent the defendants Bridges and Larkin, or to require said defendants to be entered of record as their own counsel.

"2. The court erred in granting the motion of the District Attorney for an order of dismissal of the information and all charges against the defendants, Bridges and Larkin.

"3. The court erred in overruling the motion of the defendants, Hilbish and Davis, to set aside the verdict and grant a new trial, particularly upon the ground and for the reason, that there was no sufficient corroborative evidence introduced by the state connecting, or tending to connect, Hilbish and Davis, or either of them, with the commission of the crime alleged in the information."

They will be considered in the reverse order.

During the year 1938 the Dodge Construction Company, Inc., was engaged in the construction of a highway from the town of Paradise Valley, Humboldt County, Nevada, to a point about eight miles south of said town. The company had established a road construction camp about three miles south of the town near the highway under construction. On October 23, 1938, the highway had been practically completed and the company was getting ready to abandon the camp. On the afternoon of that day a large number of its automobile truck tires and tubes kept in the camp were loaded upon a dump truck and secured thereon by wires. During the following night seven of these tires and five tubes were stolen from the truck. On the next morning the superintendent of the company, Frank Dunn, discovered the theft and informed the officers. The stolen tires and tubes were found by them at a place over what is known as Hinkey Summit, some distance north of Paradise Valley. They were found through information furnished by Larkin, who had admitted complicity in the theft,

and implicated Bridges and appellants. They were all arrested and jointly informed against for the crime. Larkin and Bridges, who had been discharged from the information by the court on motion of the district attorney, testified in behalf of the state.

From the undisputed evidence it appears that Hilbish, at the time of the theft and for about two years prior thereto, lived in the town of Paradise Valley. He kept a saloon, and during the summer of 1938 ran a small restaurant and pool hall in connection therewith. Davis was working for the Dodge Construction Company when the theft was committed and was living at the construction camp. He had been working there since July or August of that year. He was well acquainted with Hilbish and frequently visited his place of business. Bridges and Larkin were transients who stopped around Hilbish's place during the summer. The latter and they entered into an agreement for cutting and hauling wood, and pursuant thereto had established a camp in Lye Canyon beyond Hinkey Summit. They were cutting and hauling cottonwood. Hilbish had purchased a Dodge truck for hauling the wood. Some wood was hauled in the truck from the other side of Hinkey Summit to Paradise Valley about October 18.

The prosecution established by the testimony of Bridges and Larkin that they agreed to and did join in stealing the tires and tubes on the night of October 23, 1938, loading them onto the Dodge truck driven by Hilbish, taking the property over Hinkey Summit and secreting it near the wood camp.

According to the testimony of Bridges, Hilbish came into the kitchen of his place on the evening of October 22 and made the proposal to Bridges and Larkin to steal the tires and tubes. On the following evening he and Hilbish went to the construction camp in the latter's car and saw Davis. Hilbish asked him "if he was ready to go," and Davis said, "Yes." The three then came in the car to Paradise Valley, and on the way Hilbish and

Davis talked over the way the theft could be accomplished. Davis said the tires had been loaded on a truck and were to be taken to Fallon the next morning. He had loaded them himself and had loaded them in such a way that the new tires could be unloaded very easily. As they were wired on, a pair of pliers would be needed to cut the wires. When they reached town the witness told Larkin to get the pliers. He did so and the four returned to the construction camp in the same car—a Pontiac coupe. Before starting Davis said: "How about the money?" Hilbish said: "I have thirty-five dollars in my pocket here." Davis replied, "Now here, none of that, it is fifty dollars." Hilbish said: "I can drive around and get some money around at my house." He drove around to the house and went in. He came back in a few minutes and all four went in the car to the vicinity of the construction camp. Davis then went into the camp to see if it were safe to proceed. Finding no one about, Bridges was posted as a sentinel while Davis and Hilbish unloaded the tires from the truck. Hilbish rolled them up an old road about two hundred feet and placed them in the sagebrush near the old highway. Bridges took two boxes of tubes to the same place. Hilbish then paid Davis $50, and the latter returned to the construction camp. Hilbish and Bridges then took the tubes over to the new highway and the former tore a piece of cardboard off one of the boxes and stuck it up on the edge of the new highway as a marker. Larkin came up in a few minutes in the Pontiac coupe, and the three returned to Hilbish's place of business. Shortly after two o'clock in the morning they returned to the place on the new highway where the marker had been placed, Larkin driving the Pontiac coupe, accompanied by Bridges, and Hilbish driving the Dodge truck. After they reached the vicinity of the construction camp Larkin parked the Pontiac coupe and he and Bridges got into the Dodge truck. They jumped off at the cardboard marker and went over to the old highway and

rolled the tires over to the new highway, also bringing the rest of the tubes. Shortly afterwards Hilbish drove up with the Dodge truck, and the tires and tubes were loaded onto it. The truck was headed towards Winnemucca while the stolen property was being loaded. It was then taken to a place near the wood camp as heretofore stated.

On the evening of October 24 the witness saw Davis and Hilbish in the yard back of the latter's building and heard a conversation between them. Hilbish turned to Bridges and said: "Davis said we had to move those tires from the wood camp tonight; that the officers are going to be up there and search tomorrow morning." Davis said: "Yes, by all means you have to move them from there tonight if they are hid in the wood camp." Hilbish, Larkin and Bridges went to the wood camp that night and moved the tires and tubes to the place where they were finally found by the officers.

Larkin in his testimony corroborated Bridges in the main.

Appellants were witnesses in their defense and denied any participation in or knowledge of the stealing of the tires and tubes. The testimony of Bridges and Larkin, as we have seen, shows to the contrary. A conviction cannot be had on the testimony of an accomplice. It must be corroborated by other evidence which alone tends to connect the defendant with the commission of the crime. Section 10978 N. C. L.

Is there evidence in the record, aside from the testimony of the accomplices, which has such tendency?

Clifford Cuff, a witness for the prosecution, testified that he was working for the Dodge Construction Company on the highway work during September and October 1938. He was acquainted with the road camp and knew that quite a few tires were kept behind and around the shop. In the early part of October he made a trip to Winnemucca with Davis. While there, about 4 o'clock in the afternoon of that day, he had a conversation with Davis in which the latter made him a proposition in

regard to stealing those tires and told him a truck would be needed; and that he could sell the tires, but it would take a little time. The witness testified further that on the evening of October 23, 1938, at about 7 o'clock he was at Hilbish's place in Paradise Valley; that Hilbish left there at that time and returned about nine-thirty or ten o'clock, acting nervous and excited.

George McCain testified that during the months of September and October he was employed by the Dodge Construction Company on the Paradise job and was living at the camp. Lew Banks and he lived in the same bunk house. On an occasion between the 11th and 23d of October when he and Davis were working together on the highway Davis told him that he knew where he could sell those tires by the shop for $50 apiece. During that week witness and Davis went to Hilbish's saloon several times and on more than one occasion while they were there witness observed Davis and Hilbish talking in a small room off the kitchen, without a light. About 7 o'clock on the evening of October 23, when witness was in the bunk house at the construction camp, Hilbish drove up in a car and Davis went out and got in the car and left with him.

Witnesses for the prosecution, Deputy Sheriff Frank Mendiola, Frank Dunn, and H. E. Baxter, testified that on the morning of October 24 they found a water and oil leak at a point on the new highway where tires had been loaded, which leaks apparently came from a car or truck which was headed south towards Winnemucca. The witnesses also found some cottonwood bark at that place. The witness Baxter found there a piece of cardboard. This piece of tube box was similar to a piece of cardboard found by another witness at the same place. Baxter measured the distance and angle of the oil and water leak. Later he saw the Dodge truck belonging to Hilbish in Paradise Valley and saw the water leaking out of it, and the oil leak. After the truck was moved Baxter measured the distance and angle of the water and oil leak and found the measurements identical with

those he had made on the highway where the tires were loaded.

The witness Mendiola also testified that on the morning of October 24 he went down the road a ways below the camp to where the old road turns off into a gravel pit and found where a car had been driven in and backed out onto the main highway. The tracks were fresh. On the following day he went over Hinkey Summit and found Hilbish, Bridges and Larkin there. The Dodge truck was there. He examined the tracks made at the camp by the Dodge truck and found the tracks made by the front tires of the truck identical with those he found below the Dodge camp.

The testimony of Cuff and McCain indicates that Davis, shortly prior to the theft, had in mind the stealing of the tires. He only needed a truck, according to Cuff. This requisite to the consummation of the crime seems to have been supplied by Hilbish, who had the needed truck. The circumstances tend to show that this truck was employed to transport the stolen property from the vicinity of the construction camp to the vicinity of the wood camp. The agreement in distance and angle between the oil and water leaks found near the scene of the crime, with the leaks on the Hilbish truck; the agreement between the front tire tracks freshly made below the construction camp and the tire tracks made by the front tires of the Hilbish truck at the wood camp; the truck used for hauling cottonwood a few days before the theft and the piece of cottonwood bark at the place where the evidence tends to show the tires and tubes were loaded, all forms a chain of circumstances which points to the Hilbish truck as the means employed to convey the stolen property to a place of concealment. True, as contended by appellants' counsel, there is no corroborative evidence which directly shows that Hilbish was driving it on the expedition, but he was the owner of it and in possession of it for some time prior to and on the night of the crime. He

therefore had the opportunity to drive it. Opportunity standing alone would be of no consequence, but taken in connection with all the other circumstances, was something the jury could consider in reaching its conclusion. Another circumstance the jury could consider, was that Hilbish's testimony that he was at home at eight-thirty p. m. and remained there the rest of the night of October 23, is flatly denied by Cuff's testimony that on the evening of that day he was in the former's saloon and saw Hilbish leave his saloon at about 7 o'clock p. m. and return to the saloon between 9 o'clock and 10 o'clock that night, in a nervous and excited condition.

■ As to Davis, in connection with his statement to Cuff and McCain indicating intention to steal the tires, the jury had a right to consider his opportunity to do so, and formulate the plan with Hilbish. He visited the latter's place of business every night and on occasions testified to by Cuff, was in private consultation with him in a room without a light. These circumstances, though weak in probative value, were relevant. The evidence necessary to corroborate an accomplice need not in itself be sufficient to establish guilt. It may be slight in probative effect, yet its weight is for the jury, and if it tends to connect the accused with the commission of the offense, it will satisfy the statute. People v. Viets, 79 Cal. App. 576, 250 P. 588; State v. Streeter, 20 Nev. 403, 22 P. 758.

■ On the whole the evidence in this case furnished by witnesses other than the accomplices and without the aid of the testimony of the latter, tends to connect the appellants with the commission of the offense. This is sufficient corroboration. State v. Seymour, 57 Nev. 35, 57 P. (2d) 390.

■ There was no error in granting the motion of the district attorney and discharging Bridges and Larkin from the information. The motion and order were made pursuant to section 10967 N. C. L. which provides: "When two or more persons shall be included in the

same charge, the court may, at any time before the defendants have gone into their defense, on the application of the district attorney or other counsel for the state, direct any defendant to be discharged, that he may be a witness for the state."

The motion was made in apt time, as was the order that followed. Appellants had not gone into their defense. The district attorney intended to and did use Bridges and Larkin as witnesses for the state. Under the statute such a motion is addressed to the discretion of the court.

■ The contention that because of the words "any defendant" and the words "a witness" in the section, it was intended that no more than one defendant could be discharged, and it was therefore error to discharge two, is without merit. The authorities cited in support of this contention do not sustain it. In People v. Gilbert, 26 Cal. App. (2d) 1, 78 P. (2d) 770, 783, more than two persons had been indicted. Section 1099 of the Penal Code of California is identical with said section 10967 N. C. L. During the trial and before the defendants had gone into their defense, the court, on application of the district attorney, made the order discharging two of the defendants that they might be called as witnesses for the people. While the point does not seem to have been made that the court was without power to discharge more than one defendant, the order of the lower court was upheld, and the appellate court said: "* * * the court, on application of the district attorney, pursuant to the provisions of section 1099 of the Penal Code, made an order discharging the defendants * * *."

We discern no logical reason why, if more than two persons are charged with crime the legislature should deem it proper that only one should be entitled to the immunity of the statute.

The word "any" may have reference to more than one or to many, and has been frequently used in its enlarged and plural sense as meaning "some," or an indefinite number and quantity, one or more, as the case may be.

3 C. J. 231. We are satisfied that it was intended in that sense.

■■ It is contended that because the court took no evidence on the hearing of the motion its action was arbitrary and therefore erroneous. The taking of evidence was unnecessary. The statute does not require it. People v. Dillon, 68 Cal. App. 457, 229 P. 974, 975. The record discloses that the district attorney made a proper showing on the motion. The discretion of the court was properly exercised in granting the motion.

■ As to the assignment that the court erred in failing to assign counsel to represent the defendants Bridges and Larkin, or to require them to be entered of record as their own counsel, appellants cannot complain. How they could be interested in or affected by the action of the court in that regard, is difficult to see. If there were any error in this regard we are confident that it did not prejudice appellants.

The judgment and order denying appellants' motion for a new trial are affirmed.