No. 20627.

LARRY D. BINGHAM *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(401 P.2d 255)

Decided April 26, 1965.

LAURA FRANCES RILEY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, RICHARD W. BANGERT, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

BINGHAM was charged in three counts with robbery of three different persons and in three counts with conspiracy to rob these persons. These robberies as charged would fall within the ambit of C.R.S. '53, 40-5-1 (1) and (2) (a) and (b), commonly termed "aggravated robbery." Pleas of not guilty were entered to each count. In a trial to the jury, verdicts of guilty on all counts were returned.

After denying a motion for new trial, the trial court sentenced the defendant to a term of not less than two nor more than five years on each of the verdicts finding the defendant guilty of robbery, and to a term of not less than one nor more than five years on each of the verdicts finding the defendant guilty of conspiracy to commit robbery. It ordered that all sentences run concurrently.

Right to a reversal of the judgment and sentences is grounded on five alleged prejudicial errors said to have been committed by the trial court in the course of the trial. Bingham contends (1) that his motion for acquittal should have been granted; (2) that his motion for mistrial should have been granted; (3) that an objection to certain hearsay evidence should have been sustained; (4) that certain exhibits and testimony used in another criminal case should not have been admitted in this case, and (5) that certain exhibits of an officer from San Francisco should not have been received in evidence. These alleged errors shall be considered in the order in which they have been mentioned.

It appears from the evidence that a tavern and several

of its patrons were robbed by three masked gunmen on April 14, 1961, at about 8:30 in the evening. They thereafter fled in a get-away car manned by a fourth confederate.

After they left the premises, a Mr. DeVries, one of the victims, went to his car and pursued the get-away car. In the course of his pursuit he encountered an off-duty police officer, one McCarty, who also joined in the chase. Officer McCarty turned on his red and white lights in an attempt to stop the fleeing car.

In a short while the fleeing car stopped, and Officer McCarty brought his car to a stop behind it. As he was stopping his car, two or three men ran from the car ahead of his. It was at this time that someone began firing at Officer McCarty from the other car. One bullet struck the officer and wounded him superficially, whereupon he lay down on the front seat of his car.

After a matter of seconds, Officer McCarty raised up and saw another man emerge from the get-away car and pass directly in front of his headlights. This man was later identified positively by Officer McCarty as being the defendant Bingham.

Bingham and two of his alleged co-conspirators next appear in San Francisco, where they were later stopped by one Koppang, an officer of the San Francisco police department, and interrogated. Without objection Koppang searched the room rented by Bingham when he arrived in San Francisco. There he found a gun and holster. Upon being confronted with these items, Bingham, according to Koppang, stated that he owned them. This gun was later tied in with the robberies at the tavern.

At the trial Anna A. Johnson, a barmaid at the tavern, identified Bingham as one of the masked gunmen. She testified that she could identify him "by his walk, by his build, by his actions." There was evidence which linked the car with the robberies and there was evidence which linked Bingham and his alleged co-conspirators with the car.

One Gilbert Gardner, a brother of one of the alleged co-conspirators, identified two guns, one of them being the gun found in Bingham's room in San Francisco, and belonging to Gilbert. He testified that Bingham appeared at his and his brother's apartment at about 4:00 o'clock in the morning of April 15, inquiring for his brother, and that Bingham left when he learned that Gilbert's brother was not there. Gilbert further testified that his brother and another of the alleged co-conspirators came to the apartment about 11:00 o'clock in the morning of April 15, at which time he advised his brother that a person, describing him, had called for him, and that his brother had said that the person thus described was Bingham. This witness also told how his brother confided in him about the robbery "they got into," "said they were leaving . . ." He told Gilbert that there were four persons involved in the robbery.

We hold that the court did not err in denying Bingham's motion for acquittal. There was evidence identifying Bingham as being one of the participants in the robberies. We have said that identity is provable circumstantially by the height and by clothes worn by the accused. *Thompson v. People,* 139 Colo. 15, 336 P.2d 93. The cited case concerned the identity of defendants whose heads and faces were covered by women's mesh stockings at the time they committed the robbery. "The uncertainty of identification goes to its weight rather than to its admissibility." *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427.

As the fact-finding body, the jury had sufficient evidence before it to justify the verdicts of guilty on each count of robbery. When the reviewing court once ascertains that such condition exists, its course is set; it must affirm. *McClenny v. People,* 155 Colo. 202, 393 P.2d 736.

A common design is the essence of a conspiracy and must be proved, and such proof may be fashioned from evidence other than that the parties came together

and actually agreed upon a method of operation for the accomplishment of the offenses. *Medina v. People,* 154 Colo. 4, 387 P.2d 733; *Griffin v. People,* 157 Colo. 72, 400 P.2d 928. If it be shown "that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of the same object," the question of the existence of a conspiracy is presented for resolution. *Smaldone v. People,* 103 Colo. 498, 88 P.2d 103.

Contrary to Bingham's contention, the evidence is abundant to indicate the existence of a conspiracy to rob the tavern and those present in the tavern. But there is no evidence to support the charge of three separate conspiracies to commit three separate robberies.

 "[O]ne conspiracy may be formed to commit a number of offenses." *Hamilton v. People,* 24 Colo. 301, 51 Pac. 425. "The conspiracy is the crime, and that is one, however diverse its objects." *Frohwerk v. United States,* 249 U. S. 204, 39 S. Ct. 249, 63 L. Ed. 561. "The conspiracy is one offense and a single offense, no matter how many repeated violations of the law may have been the object of the conspiracy." *Brown v. State,* 130 Fla. 479, 178 So. 153.

 In outlining the evidence to be adduced by the People the prosecutor rarely prefaced his statement with the words "that the People expected to show or prove" certain things. In narrative form he told the jury of the events that took place on April 14 and 15, 1961, concerning the robberies at the tavern. The manner of making the opening statement provoked Bingham to move for a mistrial. He contended that it was made in such form as to give the jury the impression that he was testifying.

We do not believe that the jury was misled. Not only did the trial court instruct the jury that counsel's opening statements and remarks are not evidence, but, as we

view it, the prosecutor's statement performed the purpose set forth in *Thompson v. People, supra:*

"* * * Its function is simple and single — to inform. * * * And the information to be conveyed by the maker of the statement should be a clear, direct and factual presentation of the matters he expects to prove."

 Was the testimony of Gilbert Gardner, to the effect that alleged co-conspirators had told him that Bingham had participated in the crimes, inadmissible hearsay? Considered in context, the answer must be in the negative.

In context, the admissibility of this testimony comes within the rule laid down in *Smaldone v. People, supra,* "that after the conspiracy is formed the acts and declarations of one of the conspirators during its consumation are admissible against all." Such was said concerning conspiracy where it could justifiably be concluded that avoidance of the penalty for the misdeed was included within the conspiracy, and the participants cooperated to effect that end.

 We find no merit to the contention that the trial court erred in admitting in evidence exhibits which had previously been used in another trial against Bingham. It appears that these exhibits were used for a different but related offense. The exhibits were not rendered inadmissible in the instant case under the circumstances. See *Broestler v. State,* 186 Tenn. 523, 212 S.W.2d 366.

 Bingham asserts that the gun and holster produced and identified by Officer Koppang of San Francisco were erroneously admitted in evidence. Nothing other than the naked statement is advanced by him. We fail to see how the court acted erroneously in the premises, and hence hold that the contention is baseless.

Other matters related to the several asserted grounds of error, urged by Bingham, have been considered by the court and found to have no validity.

The judgment and sentences are affirmed as to the three robberies and one conspiracy. As to two conspir-

acies they are ordered to be vacated. Since the several sentences were ordered to run concurrently, vacation of the judgment and sentences as to the two conspiracies can avail Bingham nothing concerning the imposition of sentences time-wise. *Clews v. People,* 151 Colo. 219, 377 P.2d 125.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE SUTTON concur.