No. 22685.

EUGENE PAUL VIGIL *v.* THE PEOPLE OF THE STATE OF COLORADO.
(470 P.2d 837)

Decided May 4, 1970.     Rehearing denied July 13, 1970.

RICHARD D. GREENE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PAUL D. RUBNER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

DEFENDANT Eugene Paul Vigil joined with his co-defendant John Junior Padilla in presenting to this court certain arguments relating to jury selection in the case and other points of error common to both. For a discussion of those matters see *Padilla v. People,* 171 Colo. 521, 470 P.2d 846.

## I.

We consider here the one assignment of error applying to Vigil only in which he asserts that the trial court erred in denying his motion for judgment of acquittal and/or motion for new trial on the ground that there was insufficient evidence as a matter of law to sustain the charges against him.

Evidence of the homicide committed during a robbery was that on August 28, 1964, two armed men entered the Seagrams Inn at 4700 Claude Court, Denver, at about 10:45 a.m. One gunman, wearing a stocking over his face and white gloves, ordered George Albert Hanson, an owner of the Inn, to walk to the rear of the establishment where a safe was located. Hanson preceded the gunman to the rear. The other gunman, who wore a hood over his face, remained guarding the front door of the Inn. When Hanson and the stocking-masked gunman were out of sight of all other persons in the bar, three rapid shots were heard, followed by a fourth shot. The stocking-masked man (Padilla) staggered back into the main bar, stated he was shot, and thereupon the hooded gunman ran out the front door. Hanson was found lying in the hallway, mortally wounded. A witness testified that he saw a man run from the Inn, remove a hood, jump into the passenger side of a white 1959 Ford in which there was another person in the driver's seat. Police located a white Ford such as the one described by the witness a short distance from the Inn a few minutes after the

crime was reported. Vigil was alleged by the People to be the driver of the "get-away" car. A fingerprint alleged to be that of defendant Vigil was subsequently taken from the left front wing vent of the car.

There was evidence that two cars were used in the "get-away." A witness for the People, one Sharpley, testified that he saw the white Ford traveling very fast before it stopped near a green and white Chevrolet, and that he observed two men run from the Ford to the Chevrolet and speed away. He identified Vigil as one of the men.

Vigil attacks the reliability of the testimony of the only eyewitness who identified him as the driver of the "get-away" cars, claiming that this testimony was inconsistent and did not constitute a positive identification.

In *Bustos v. People,* 158 Colo. 451, 408 P.2d 64, this court stated as follows:

"We have held on many occasions that it is not the duty of this Court to superimpose its judgment or conclusions for those of the jury when determining the veracity of the identifying witnesses. *Miller v. People, supra; Duran v. People,* 147 Colo. 491, 364 P.2d 206. It is not essential that a witness be free from doubt as to the correctness of his opinion nor that he be able to identify the accused positively. *Bingham v. People,* 157 Colo. 92, 401 P.2d 255; *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427."

The prosecution in the case at bar presented further evidence to connect Vigil with the crime. The same witness who identified Vigil had examined the green and white Chevrolet which was parked near his home. A few minutes later when police arrived on the scene he gave them a description of the Chevrolet from which the police were led to Vigil, who was apparently the owner of a car which fit the witness' description. While there were certain inconsistencies between the description given and Vigil's Chevrolet, there was also evidence from which the jury could infer that the car belonging to Vigil was the same one driven off by the two men who

transferred from the Ford to the Chevrolet. The witness described certain items which he saw on the front seat of the Chevrolet. These were found on the front seat of Vigil's car. Later that afternoon, from a lineup, he identified Vigil as the driver of the cars.

All of the testimony concerning the identification of Vigil, of the automobiles, and the fingerprint evidence was subjected to strenuous cross-examination. The defense introduced testimony which, if believed, would have established an alibi for Vigil. The uncertainties and inconsistencies in the People's evidence could only reduce the possible weight accorded the testimony; it could not diminish its sufficiency.

The judgment is affirmed.