FRANK LaPENA, APPELLANT, *v.* SHERIFF, CLARK COUNTY, NEVADA, RESPONDENT.

No. 8081

October 30, 1975                    541 P.2d 907

---

*Goodman and Snyder,* and *Douglas G. Crosby,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, *George E. Holt,* District Attorney, and *Dan M. Seaton,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Appellant Frank LaPena was held to answer for the crime of second-degree kidnapping, NRS 200.310, and battery with use of a deadly weapon, NRS 200.481. He appeals the denial of his writ of habeas corpus contending insufficiency of evidence of corroboration of the accomplice testimony to justify holding him for trial. NRS 175.291.[1]

---

[1]175.291  Testimony of accomplice must be corroborated; sufficiency of corroboration; accomplice defined.

1.  A conviction shall not be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, and without

LaPena is accused of hiring Gerald Weakland to kidnap and injure Willis Obenauer, manager of the Hacienda Hotel in Clark County, where LaPena worked as bell captain. Weakland and one Robert Webb testified as State witnesses that they, Weakland as the principal and Webb as his helper, took Obenauer against his will into the desert near Las Vegas in the early morning hours of November 24, 1973, where Weakland severely beat Obenauer with a 9 millimeter pistol and then shot him in the calf of each leg with a .38 caliber pistol.

Weakland's testimony was that LaPena claimed bad blood between himself and Obenauer, his superior at the Hacienda, because Obenauer was "riding" LaPena in the performance of his duties. LaPena hired Weakland to "rough up" Obenauer for the total payment of $500.00. Weakland testified that LaPena first identified Obenauer for him after the deal was made at a prearranged meeting at the Hacienda, and that he gave Weakland some money on account and also a pair of lead-filled gloves apparently to be used for the beating. Webb came into the picture at Weakland's request and the two accompanied LaPena, according to their testimony, to the parking lot of the Hacienda where Obenauer's parked car was pointed out to them by LaPena. He also told them the approximate time that Obenauer would likely appear in the early morning hours when he left work to go home.

NRS 175.291(1) prohibits a conviction on testimony of an accomplice unless he is corroborated. Weakland and Webb being accomplices, it becomes necessary to determine what evidence is present, independent of the accomplice testimony, to connect LaPena with the crime. We need not find the necessary corroboration in a single fact or circumstance, of course. Rather, if several circumstances in combination show LaPena's criminal involvement, we may find the statute satisfied. People v. Trujillo, 194 P.2d 681 (Cal. 1948).

We note, first of all, that although the circumstances of the crime suggest its motive was a lust for vengeance, it appears

the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof.

2. An accomplice is hereby defined as one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.

from Obenauer's testimony that neither Weakland nor Webb had any personal reason for animus against him. Obenauer did not even know them. It might be inferred, therefore, that some acquaintance of theirs, harboring hatred for Obenauer, had inspired their attack upon him. As held in Goldsmith v. Sheriff, 85 Nev. 295, 454 P.2d 86 (1969), inferences are permitted in the corroboration of accomplice testimony.

Obenauer also testified that a week or two before the kidnapping and beating, he saw Weakland and LaPena talking to each other in the Hacienda at the bell desk, and noted that they looked at him as he went by. By itself, of course, this testimony would mean little, and doubtless would not independently tend to incriminate LaPena. Mere association frequently has been viewed as insufficient to corroborate an established wrong-doer's accusation. See, for example: Eckert v. State, 91 Nev. 183, 533 P.2d 468 (1975); Austin v. State, 87 Nev. 578, 491 P.2d 724 (1971); Ex parte Hutchinson, 76 Nev. 478, 357 P.2d 589 (1960). However, from additional evidence, it may be inferred that LaPena was not merely a close associate of Weakland, but one who had a motive to injure Obenauer, and who was linked to Weakland in a criminal scheme, quite possibly involving a criminal assault.

In this regard, it appears from Obenauer's testimony that he and LaPena did not get along and that on at least two occasions he had felt constrained to cite LaPena for infraction of hotel rules. Inferably, such confrontations occasioned hatred in LaPena. A bellman, Mario Macias, testified LaPena had told him that he would like to "tear Obenauer's heart out." Moreover, Weakland's former wife, Gail, with whom he was living despite their divorce, testified that she saw LaPena and Weakland together at the Tower of Pizza shortly before the assault on Obenauer, and that Weakland ordered her out of their presence while they talked. Later, she said, after the assault on Obenauer, Weakland caused her to return certain lead-filled gloves to LaPena, which LaPena took from her furtively when she delivered them to him at the Hacienda Hotel.

Of course, at trial, some of the circumstances just mentioned may be explained to the jury's satisfaction. It may be shown that Gail Weakland, in truth, was an accomplice in her husband's misdeeds, and therefore that her testimony cannot be utilized to corroborate his. On the record before us, however, the magistrate quite properly could decide that the circumstances recited above were established "without the aid"

of accomplice testimony. Taken together, such factors may be deemed inculpatory, and more than mere coincidence. Cf. Austin v. State, cited above.

To commit a defendant to trial the State is merely required to present enough evidence to support a reasonable inference that the accused committed the offense. Kinsey v. Sheriff, 87 Nev. 361, 487 P.2d 340 (1971); Morgan v. Sheriff, 86 Nev. 23, 467 P.2d 600 (1970). If circumstances and evidence from sources other than the testimony of the accomplice tend on the whole to connect the accused with the crime charged it is enough. State v. Seymour, 57 Nev. 35, 57 P.2d 390 (1936); see also State v. Hilbish, 59 Nev. 469, 97 P.2d 435 (1940); State of Nevada v. Chapman, 6 Nev. 320 (1871).

Affirmed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.