IRWIN WILLIAM FISH, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 7852

May 10, 1976                                        549 P.2d 338

*Raymond E. Sutton,* of Las Vegas, for Appellant.

*Robert List,* Attorney General; *George E. Holt,* District Attorney, *Dan M. Seaton,* Chief Deputy District Attorney, and *Elliott A. Sattler,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Irwin W. Fish, also known as Bill Fish and Bill Faisch, was convicted by a jury of the first-degree murder of Abraham Schwartz whose body was discovered in a shallow grave near Las Vegas in September of 1972.

At trial, it was established that Fish and three accomplices, David Miller, Douglas Webb and Benny Shoemaker, conspired in the abduction and execution of Schwartz. The critical evidence produced at trial consisted primarily of the testimony of three witnesses: David Miller (who testified under a grant of immunity from the state), his wife Constance and the wife of Douglas Webb, Suzanne.

On appeal, Fish claims (1) that the trial court erroneously permitted David Miller and his wife Constance to relate certain conversations which occurred outside the presence of Fish; (2) that the trial court erroneously refused to give certain proposed instructions to the jury; and (3) that insufficient evidence was produced at trial to corroborate the testimony of David Miller.

1. A significant portion of David Miller's testimony consisted of his account of conversations with and between his fellow conspirators. Such testimony is admittedly hearsay, was acknowledged as such by the trial court but nevertheless was admitted into evidence over objection by trial counsel. The trial court correctly observed that the hearsay statements fell within a well-recognized exception to the hearsay rule. Hearsay statements may be admitted into evidence where the statement "is made by a coconspirator of a party during the course and in furtherance of the conspiracy." NRS 51.035(3)(e);[1] Goldsmith v. Sheriff, 85 Nev. 295, 454 P.2d 86 (1969). As a

---

[1]NRS 51.035 states as follows: " 'Hearsay' means a statement offered in evidence to prove the truth of the matter asserted unless:

. . .

3. The statement is offered against a party and is:

. . .

(e) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

prerequisite to application of the "statements of coconspirators" exception to the hearsay rule it must be determined by reference to independent evidence that a conspiracy existed. Fish argues that evidence in this regard is lacking.

The amount of independent evidence necessary to prove the existence of a conspiracy may be slight, it is enough that only prima facie evidence of the fact is produced. Goldsmith v. Sheriff, supra. The evidence that Webb, Miller, Shoemaker and Fish conspired to kill Schwartz is substantial. Miller testified that on April 27, 1972, Fish told Miller and Webb that he was having trouble with Schwartz and that they would have to "take care of him." At that meeting Fish gave Miller and Webb Schwartz's address and a description of his car. They began to follow and observe Schwartz and checked in with Fish intermittently. Prior to the killing they stayed in a motel in Las Vegas leased and operated by Fish without paying for their accommodations. The day before the killing, in the presence of Miller and Webb, Fish telephoned Schwartz and arranged to meet him the following morning. Before Schwartz arrived at the designated meeting place, Fish again met with Webb and Miller and outlined in detail the murder plan and furnished them with "knock-out drops," the use of which the plan required.

The related facts are prima facie evidence of a conspiracy and therefore constituted a sufficient foundation for admitting the extra judicial statements of Fish's coconspirators made during the course and in furtherance of the conspiracy.

2. Constance Miller, not a coconspirator, testified to conversations overheard by her between Miller, Webb, Shoemaker and Fish. The fact that she was not a coconspirator does not preclude her testimony under NRS 51.035(3)(e) since that statute does not require that the witness be a coconspirator, only that the statement in question be by a coconspirator. Any statements made by Miller, Webb, Shoemaker or Fish during the course and in furtherance of the conspiracy were admissible regardless of who testified as to having heard the statements. Bingham v. People, 401 P.2d 255 (Colo. 1965); but see also State v. Sanders, 496 P.2d 270 (Utah 1972).

Constance Miller related many statements overheard by or

directed to her by Miller, Webb, Shoemaker and Fish at various times. Appellant claims that the admission of these statements was error for the reason that they were not made during the course or in furtherance of the conspiracy but directs us to no particular statements he considers prejudicial and cites no authority supporting his position. While several of the statements related by Mrs. Miller were objectionable on the ground that they were not made during the course or in furtherance of the conspiracy, trial counsel objected only once on this ground. Unless the error is fundamental, specific objection must be made thereto at trial in order to preserve the issue for consideration on appeal.[2] Shepp v. State, 87 Nev. 179, 484 P.2d 563 (1971); Sparkman v. State, 88 Nev. 680, 504 P.2d 8 (1972). In this instance, admission of the statements to which no objections were interposed was not fundamental error mandating reversal. The statement which was admitted over objection was not prejudicial and therefore constitutes no ground for reversal.

It should be noted that many of the statements related by Mrs. Miller were made by Fish or were made in Fish's presence and therefore were admissible as admissions or adopted admissions. NRS 51.035(3). Those statements not falling within these exceptions and to which no objections were made were largely innocuous and, in any event, were nonprejudicial.

3. Fish proposed several jury instructions with the hope that the jury would be permitted to find that Mrs. Miller and Mrs. Webb were accomplices whose testimony would require corroboration. The trial court rejected his proposed instructions on the ground that there was no evidence suggesting that the two women were accomplices. The record supports that finding. We find no error in the giving or refusal to give instructions by the trial court.

4. Fish finally contends that there was insufficient evidence to corroborate the testimony of David Miller. The record indicates otherwise. Fish concedes that he knew Schwartz, that the body was found and the murder weapon recovered. Independent of Miller's testimony, Constance Miller and Suzanne Webb stated that David Miller admitted that the murder weapon was registered to him. They further testified that Webb, Miller and Shoemaker spent a considerable amount of time with Fish ostensibly under his employ but did no actual work;

---

[2]Appellant's counsel did not represent Fish at the trial, only on this appeal.

that Webb stated to his wife that things did not work out as planned, Schwartz was not cooperating with Fish and Fish therefore had instructed him to kill Schwartz; that Webb admitted to them that he did the killing; that Fish was disappointed at the amount of money Miller and Webb found on Schwartz at the time of his abduction; that Fish stated that Schwartz was a "cheap Jew" and that "the money taken from him wouldn't make a dent in what Fish owed"; that on May 22, after the killing, Fish told them not to worry, Schwartz had several enemies and they would not be looked upon with suspicion; that after the killing Fish expressed his pleasure that Webb and Miller had followed his instructions and changed their appearances by dyeing their hair; that Fish promised he would obtain false identification cards for Miller and Webb; and that Fish had purchased a cemetery business in Kentucky for "his boys" to operate while they "stayed low."

Fish's secretary testified that Fish instructed her to send money orders to Webb and Miller who were at that time in Cumberland Gap, Kentucky.

Don Sure, a salesman from southern California, testified that Fish had done business with Schwartz and that Fish had told Sure that he was going to kill Schwartz because of an unsatisfactory business relationship.

Joseph Di Rodeo testified that he overheard Fish threaten Schwartz stating, "you're next." Fish admitted that he had made an appointment with the deceased for 8:30 a.m. on the day of the murder, just prior to which was the last time Schwartz was seen alive. Fish also admitted to a detective that he made the statement, "I wish I could push a button and destroy Schwartz."

The record also discloses that Fish's car was used in perpetrating the homicide and that his accomplices depended upon him for financial support both before and after the killing.

Thus, the record is replete with facts suggesting a close association among Fish and the killers. The record also clearly suggests that Fish had a motive to kill Schwartz while, independent from their association with Fish, the actual perpetrators (Miller, Webb and Shoemaker) did not.

The corroborative evidence presented in this case, under all the rules and principles announced by this court, is more than ample to support Fish's conviction. For example, see LaPena v. State, 92 Nev. 1, 544 P.2d 1187 (1976); LaPena v. Sheriff, 91 Nev. 692, 541 P.2d 907 (1975); Eckert v. State, 91 Nev.

183, 533 P.2d 468 (1975); Austin v. State, 87 Nev. 578, 491 P.2d 724 (1971); Marquette v. State, 91 Nev. 696, 541 P.2d 1099 (1975); State v. Hilbish, 59 Nev. 469, 97 P.2d 435 (1940).

Affirmed.

BATJER, MOWBRAY, and THOMPSON, JJ., concur.

GUNDERSON, C. J., concurring:

I concur in the result.