THELMA PINANA, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 4216

May 31, 1960                                    352 P.2d 824

*Gray and Young,* of Reno, for Appellant.

*Roger D. Foley,* Attorney General, *William J. Raggio,* District Attorney, Washoe County, and *Emile J. Gezelin,* Chief Deputy District Attorney, Washoe County, for Respondent.

# O P I N I O N

By the Court, McNamee, C. J.:

Appellant by jury verdict was found guilty of murder in the first degree and the jury by its verdict fixed the penalty at confinement in the state prison for life without possibility of parole. Appeal is from the judgment based on said verdict and from the order denying a new trial.

On September 14, 1958, in the home of appellant and her husband in Reno, Nevada, appellant shot her husband. The shooting occurred at 8 o'clock in the morning after the parties had been out all night visiting several bars and consuming a number of drinks. Immediately preceding the shooting they had engaged in an argument and had discussed a divorce. According to appellant's testimony the pistol had been in a drawer of the nightstand in the bedroom. She stated she intended to unload the gun and while it was in her hands it discharged. After being shot, the victim walked outside the house and fell dying in the street. Appellant was interrogated by police officials on the day of the shooting before she knew her husband had died and also on the next day after she had been informed of the death of her husband. An autopsy was performed on the deceased, revealing that three bullets had pierced the body of the victim.

Several weeks after the shooting, appellant was examined by a psychiatrist at the request of the district attorney. Thereafter a motion by her counsel that she be examined from a medical and psychiatric standpoint at county expense was denied. A motion for an order compelling the pre-trial disclosure of an autopsy and blood alcohol report on the deceased, a blood alcohol test on appellant, and of certain statements made by appellant to law officials was denied. A petition for a writ of

mandamus to compel such pre-trial disclosure was filed in this court and denied upon the ground that mandamus does not lie to control judicial discretion or to review the propriety of judicial action. Pinana v. Second Judicial District Court, 75 Nev. 74, 334 P.2d 843.

The specifications of error are hereinafter considered separately:

(1) Did the trial court err in refusing to permit pre-trial inspection of the autopsy report, blood alcohol tests, and statements of appellant?

Appellant concedes that there was no common-law right of discovery or inspection prior to trial in criminal cases. Such right was created in England in modern times upon the adoption there of a pre-trial procedure which permits counsel for a defendant to have in his possession before the trial begins all of the evidence that can be presented at the trial. Of course, this change of the common law occurred long after the adoption of the common law in this state. Appellant contends that the adoption of the Nevada Rules of Civil Procedure which provide for pre-trial disclosure in civil cases should be likewise applied to criminal actions because of NRS 178.225 which provides: "The rules of evidence in civil actions shall be applicable also to criminal actions, except as otherwise provided in this Title." This statute is identical with section 604 of the 1911 Act regulating proceedings in criminal cases found in NCL(1929) § 11251. It obviously could have no application to Nevada Rules of Civil Procedure which were adopted January 1, 1953. People v. Wilkins, 135 Cal.App. 2d 371, 287 P.2d 555. See State ex rel. Keast v. District Court, 135 Mont. 545, 342 P.2d 1071. Furthermore, by its very terms it refers to "evidence in civil actions" and not to procedure.

In the absence of statute giving a defendant the right to pre-trial inspection of the prosecution's evidence, the decisions are not harmonious in dealing with this matter. The general rule is that in the absence of statute the allowance of such inspection rests within the discretion of the trial court. Appellant concedes this in the

oral argument. We assumed such to be the rule in Nevada, when in refusing to issue a writ of mandamus to compel the lower court to permit inspection we stated that mandamus would not lie to control judicial discretion. Pinana v. Second Judicial District Court, supra.

There are many good reasons why courts in the exercise of their discretion should be liberal in allowing pre-trial inspection of prosecution evidence, but proper limitations to such inspections must be respected. See People v. D'Andrea, 20 Misc.2d 1070, 195 N.Y.S.2d 542. Unless a trial judge is required by statute to permit a particular type of inspection, it is not erroneous for him to deny inspection where the basic rights of a defendant would not thereby be prejudiced. The trial judge before whom the situation can easily be presented is able to determine better than an appellate court what is proper in a particular case. We fail to find anything in the record to support appellant's contention that this denial of pre-trial disclosure prevented her from having a fair trial.

In her reply brief appellant states that if the court had inherent discretionary authority to permit pre-trial inspection it refused to exercise such discretion. This assertion is based upon this statement of the court: "However, it may be a good thing to have pre-trial discovery in criminal cases, but until the Legislature tells me otherwise, the motion will be denied." All that the court's statement amounts to is that, absent statutory compulsion, he would not grant the particular motion, under the particular circumstances, in the particular instance. But, in any event, as heretofore stated, no prejudice was shown to appellant by the court's ruling and, thus, no reversible error can be claimed therefrom. State v. Squier, 56 Nev. 386, 54 P.2d 227; NRS 169.110.

(2) Appellant claims that the court erroneously denied appellant's motion that she be given a pre-trial psychiatric and medical examination at the expense of the county.

Counsel concede that there is no statutory basis for

such a motion but contend that the court has inherent discretionary power to grant such a motion, and for it to decline to consider the motion "upon the ground that there is no statutory authority represents an abuse of discretion." The record does not disclose that such was the reason for the court's denial of the motion. Nor does anything appear in the record to show that the court was of the opinion that it had no inherent power to grant such a motion. In our opinion this contention is without merit.

. The court's denial of this motion did not result in a miscarriage of justice nor was appellant actually prejudiced in respect to a substantial right in view of the fact that she was examined before the trial by Dr. Raymond M. Brown, a physician and surgeon of her own choosing who was a specialist in psychiatry. His testimony at the trial based upon such examination was to the effect that appellant at the time of the shooting was suffering from a mental disease, that she had an acute psychosis, and was in a state of confusion, and that she did not know the nature and quality of the act which was committed.

We. fail to see where appellant could have profited more from testimony given by such a specialist merely because his services were paid for by the county.

(3) Appellant contends that subsection 4 of NRS 200.030 is unconstitutional in so far as it permits a jury to fix the penalty for first degree murder at life without possibility of parole.

In her opening brief she fails to distinguish between pardon and parole. It is her contention that Article 5, § 14, of the Nevada Constitution, which empowers the governor, justices of the supreme court, and attorney general to "remit fines and forfeitures, commute punishments, and grant pardons, after convictions" precludes the legislature from conferring the power of parole upon a court. The contention is without merit.

A parole is distinguishable from pardon. Ex parte Anderson, 191 Ore. 409, 229 P.2d 633, 230 P.2d 770,

29 A.L.R.2d 1051; State ex rel. Murphy v. Superior Court, 30 Ariz. 332, 246 P. 1033, 47 A.L.R. 401; 39 Am. Jur., § 11, Pardon, Reprieve and Amnesty, p. 525. The rule by some decisions is that the power to pardon includes the power to parole. 67 C.J.S. § 19, p. 600. However the law seems well settled that no infringement upon the powers of the executive to grant pardons, reprieves, or commutations of sentences occurs, where a statute empowers an *administrative body* to establish a system of parole. Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 28 A.2d 897, 143 A.L.R. 1473 (Annot., p. 1486); Application of Fredericks, 211 Ore. 312, 315 P.2d 1010.

Likewise the pardoning and sentence-suspending power of the executive could not be infringed by statute giving the *courts* power over paroles.

In Commonwealth ex rel. Banks v. Cain, supra, [345 Pa. 581, 28 A.2d 899] the Pennsylvania Supreme Court said: "The constitutionality of this statute is attacked on two principal grounds. The first is that it infringes upon the power of the Governor to grant commutations of sentence and pardons * * * . There is no novelty in this contention; it has been made many times in the courts of other states in which parole systems are administered by boards or prison managers, and has been rejected in practically all jurisdictions. (Citing cases.) There is a radical difference between a pardon and a parole. A pardon is the exercise of the sovereign's prerogative of mercy. It completely frees the offender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal disabilities resulting from his conviction. It blots out the very existence of his guilt, so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense: (Citing cases). A parole, on the other hand, does not obliterate the crime or forgive the offender. It is not an act of clemency, but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. It does not set aside or

affect the sentence; the convict remains in the legal custody of the state and under the control of its agents, subject at any time, for breach of condition, to be returned to the penal institution. Neither is a parole a commutation of sentence, within the meaning of that term in the constitutional provision. When our present constitution was adopted, parole, as a penological expedient, was unknown to American jurists and legislators, and 'commutation' was then generally understood as meaning a reduction in the length of the sentence, effecting a discharge of the prisoner without any further supervision over him by the state authorities. The constitutional power of the Governor to grant pardons and commutations of sentence is exclusive, so that the fact that the legislature has, by various statutes, given the power of parole to the criminal courts, to the board of managers of the Industrial Reformatory at Huntingdon, and to the board of trustees of the State Industrial Home for Women, indicates that parole has never been considered as being within the category of either pardon or commutation. The courts in other states have held that a parole is not a commutation as that term is employed in their respective constitutions." (Citing cases.)

The subject of parole in this state is within the legislative authority given by the constitution to the legislature. Art. 4, Sec. 1, Nevada Constitution. Parole is not a constitutional right; it is a right bestowed by legislative grace. Zink v. Lear, 28 N.J.Super. 515, 101 A.2d 72.

The legislature has the exclusive power to determine the length of imprisonment for a felony. In re Callahan's Petition, 348 Mich. 77, 81 N.W.2d 669. And in the enactment of NRS 200.030 it was merely exercising its constitutional powers.

Appellant also contends that NRS 200.030 is unconstitutional in that it violates the equal protection clause

of the federal constitution by empowering the jury to give some persons convicted of first degree murder life sentences with the possibility of parole and to deny the possibility of parole to others.[1] This argument loses force in view of appellant's admission that a jury upon finding a person guilty of first degree murder may properly determine the punishment at death or life imprisonment. Statutes giving courts or juries discretion in the fixing of punishment, with respect both to the nature thereof (a fine or imprisonment or both), and to the extent thereof within certain fixed limits are not violative of constitutional equal protection provisions. Cochran v. Simpson, 143 Kan. 273, 53 P.2d 502; cf. Ughbanks v. Armstrong, 208 U.S. 481, 28 S.Ct. 372, 52 L.Ed. 582; People v. Dixon, 400 Ill. 449, 81 N.E.2d 257.

As to the effectiveness of the provision in the verdict against parole, it may be that it can be considered at the time appellant, in the absence of such a provision, would otherwise become eligible for parole. Until the minimum sentence as fixed by the parole board for a sentence of life imprisonment has been served appellant would not be deprived of any substantial right. In re Current, 76 Nev. 41, 348 P.2d 470. The said provision of course would not bar a pardon or a commutation of the sentence.

(4) Appellant's counsel had issued a subpoena duces tecum directed to the prosecuting attorney herein and requiring him to produce certain statements made by appellant on September 14, 1958. The lower court's action in sustaining the state's objection to the production of said statements is cited as error. We believe however that this action of the trial court was proper.

It is to be noted that the prosecuting attorney was willing to take the stand and testify regarding those matters contained in the statements which were related to him by appellant, but it is apparent from the record

[1]Subsection 1 of NRS 213.120 provides: "No prisoner imprisoned under a verdict or judgment and sentence of life imprisonment without possibility of parole shall be eligible for parole."

that appellant's counsel was not interested in the statements for an evidentiary purpose but solely to peruse them and become familiar with their contents. In other words the subpoena duces tecum was being used solely for the purpose of discovery, and an attempted pre-trial discovery with respect to said statements had already been denied appellant. The necessity for the production of said statements at this stage of the proceedings was not shown and, furthermore, the statements were later received in evidence.

The office of a subpoena duces tecum is not to require the production of books and papers for a party's inspection. American Car & Foundry Co. v. Alexandria Water Co., 221 Pa. 529, 70 A. 867, 128 Am.St.Rep. 749; 58 Am.Jur., § 20, Witnesses, p. 33.

(5) Appellant claims that she is being deprived of her liberty without due process of law because she was not advised of her rights in the preliminary hearing, and because the state did not comply with the law pertaining to preliminary hearings.

The proceedings in the justice's court disclose that on September 10, 1958, a complaint was filed and appellant "being present in court, she was duly and regularly arraigned, and upon being advised of her rights, and of her right to obtain private counsel to defend her at the time of her preliminary hearing, said hearing is hereby set for September 29, 1958, at the hour of 2 p. m." That at the time so set, the preliminary hearing took place and appellant was held to answer.

In our opinion this shows a compliance with the provisions of NRS 171.370 which states that when the defendant is brought before the magistrate upon an arrest on a charge of having committed a public offense, "the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel at every stage of the proceedings."

The record does not expressly state that she was informed of the charge, but the recital that she was

"arraigned" implies that she was so informed. It is true that arraignment refers to the initial appearance of a defendant in the district court after an indictment or information has been filed. It consists in part of "reading the indictment or information to the defendant." NRS 174.130. It is apparent that the justice of the peace in stating that the appellant "was duly and regularly arraigned" was recording the fact that she was informed of the charge against her by the reading of the complaint.

Although the record fails to state that appellant was informed of her right to counsel "at every stage of the proceeding" she was informed of her right to have counsel at the preliminary hearing, which was the only hearing prior to trial, and at the trial and subsequent thereto she was at all times represented by counsel. Appellant proceeded to trial on the merits without raising any objection to the proceedings in the justice's court, and in doing so waived any irregularities which might have occurred therein. See State v. Dale, 66 S.D. 418, 284 N.W. 770; State v. Reddington, 7 S.D. 368, 64 N.W. 170.

(6) Error is claimed in the giving and refusing to give certain instructions.

a. Instruction 12 states in part: "All murder which is perpetrated by means of lying in wait is murder of the first degree." Appellant contends that this instruction was defective because the court failed to explain that murder must first be established before the question of lying in wait can arise. In the other instructions given the court defined murder and stated that to find appellant guilty thereof all of the elements must have been proven beyond a reasonable doubt. In view of the appellant's own testimony the jury could properly have inferred that she was "lying in wait" for the victim at the time of the shooting. Under such circumstances this instruction was proper to aid the jury in determining the degree of the offense in the event they found the appellant guilty of murder.

b. Instruction 18 paraphrases subsection 4 of NRS 200.030. It was properly and necessarily given in order to inform the jury of the nature of its duty in the event it found the defendant guilty of murder in the first degree. No further guidance to the jury in fixing the punishment is required.

c. In instruction 19 the court properly defines second degree murder. It was not error for the court to refuse to add thereto a repetitious sentence stating the definition in similar rearranged words.

d. Instruction 25 explains when drunkenness is no excuse for the commission of a crime. This instruction substantially states the law on the subject. State v. Thompson, 12 Nev. 140.

e. Instruction 29 reads: "A mind capable of knowing right from wrong is a mind capable of entertaining intent, and of deliberating and premeditating." This is a correct statement of the law. Fox v. State, 73 Nev. 241, 316 P.2d 924. Considered with the other instructions it could not be misleading, as claimed by appellant.

f. Appellant contends that it was error for the court to refuse to give her requested instructions on intent, reasonable doubt, presumption of innocence, state of mind, insanity, and intoxication. All of these matters were substantially and properly covered in the instructions given. If it were error not to have given any particular requested instruction, the same will not be considered on appeal in the absence of a showing that appellant was prejudiced thereby. NRS 169.110.

(7) Appellant claims error in the court's refusal on the motion for new trial to permit her to show that the jury was guilty of misconduct.

The motion for new trial was grounded upon the alleged errors heretofore considered and also upon the ground that the jury was guilty of misconduct in that

it received evidence out of court and that the "verdict has been decided by a means other than a fair expression of opinion on the part of all of the jurors."

In support of this latter ground appellant offered in evidence the affidavits of Leslie B. Gray, one of appellant's counsel, and of Ernest R. Ferguson. These affidavits concerned only hearsay statements of Richard Haman, one of the jurors, and amounted to an indirect way of permitting a juror to impeach his own verdict. The court properly held that they were entitled to no consideration. Priest v. Cafferata, 57 Nev. 153, 60 P.2d 220.

The motion for new trial stated that in addition to said two affidavits it would be based on the personal testimony of the jurors. When several of the jurors were called to testify, objection to the admission of such testimony was sustained by the trial court. From the offer of proof presented the purpose of this testimony was an attempt to have the jurors impeach their own verdict by showing they had answered questions on their voir dire examination improperly and that they had considered facts outside the record. As stated in Priest v. Cafferata, supra: "Scarcely any rule of law is more thoroughly entrenched in the jurisprudence of this country than the general one that a juror will not be heard to impeach his own verdict." The court did not err in refusing to permit the jurors to testify under these circumstances. So. Nev. M. Co. v. Holmes M. Co., 27 Nev. 107, 73 P. 759, 103 Am.St.Rep. 759.

(8) Appellant's last assignment of error is that the verdict is contrary to the law and that the evidence is insufficient to sustain a verdict of murder in the first degree.

It clearly appears from the record that there was sufficient evidence from which the jury could determine that appellant consciously conceived an intent to kill her

husband, that she had the capacity at the time of the shooting to reflect and to understand the consequences of her actions, that the killing was willful, deliberate, and premeditated, and, as stated before, there was evidence of lying in wait which with the other evidence establishing murder would support a verdict of murder in the first degree.[2]

The duty of an appellate court to review the evidence has been performed when it has determined that there is substantial evidence to support the verdict.

In State v. Bourdlais, 70 Nev. 233, 255, 265 P.2d 761, 771, this court said:

"It has been the rule in the State of Nevada, long established and consistently adhered to by this court, that if there is substantial evidence to support the verdict of the jury, the evidence will not be weighed by this court, nor the verdict or judgment disturbed. This court cannot reverse the judgment upon the ground of insufficiency of the evidence where there is substantial evidence to support the verdict of the jury."

No prejudicial error appearing, the judgment and order denying the motion for a new trial are affirmed, and the application for modification of the judgment by reducing the degree of the crime is denied.

BADT and PIKE, JJ., concur.

---

[2]Some of the evidence in the record which supports the verdict is as follows: a pillow in front of the bathroom door with an apparent bullet hole through it, evidentiary of an attempt to silence the shots; appellant's act of tearing up her marriage license prior to the shooting; the existence of three bullet wounds in the body of the victim and the testimony that the shots "weren't real close together"; appellant's taking the gun into the bathroom from where the first shot was fired; appellant's concealing herself in the bathroom with the door partially open; and appellant's statement immediately after the shooting that "I shot him. I killed him. He was going to leave me and I fixed him good."