ELMER FINCH CRISWELL, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 5415

July 15, 1968                                        443 P.2d 552

*Orville R. Wilson,* of Elko, for Appellant.

*Harvey Dickerson,* Attorney General, *Mark C. Scott, Jr.,*
District Attorney, Elko County, for Respondent.

## OPINION

By the Court, BATJER, J.:

The appellant, Elmer Finch Criswell, was charged with murder, and after a trial the jury found the appellant guilty of second degree murder. The trial court entered its judgment accordingly.

In Elko, Nevada, on July 9, 1966, David Olin Gillaland and George William Comrie were murdered. On July 10, 1966, at 7:15 a.m., the appellant was arrested and booked at the Elko County jail as a material witness in connection with the death of Gillaland and Comrie. Shortly thereafter, appellant spoke to police chief Francis D. Taelour, who accompanied him to the scene of the crime. At approximately 9:00 a.m., his clothes were removed by a police officer and held for examination. At approximately 9:25 a.m., of the same day, the appellant, in the office of the district attorney, was advised of his constitutional right to remain silent, that anything that he might say could be used against him in court, that he had the right to counsel, and if he was indigent and could not afford counsel that counsel would be provided. Immediately thereafter the appellant made an exculpatory statement blaming his companion, Leonard Logan, for killing both men.

On July 15, 1966, the appellant was present at a preliminary hearing in Elko Township Justice Court and testified at length as a witness in the case of State of Nevada vs. Leonard Logan. Thereafter, Logan was bound over to district court and subsequently pled guilty to the second decree murder of Gillaland.

On July 28, 1966, the appellant consented to go to Reno to take a polygraph test. He was accompanied by Hubert Borjas, the undersheriff of Elko County, and was introduced to William Broadhead, an officer of the Reno Police Department, who advised the appellant that he was entitled to have an attorney present, that he didn't have to talk, but anything he might say could be used against him in court, and if he couldn't afford an attorney one would be appointed for him. At that time the appellant stated that he understood his rights and that he had been advised of them before.

In his conversation with William Broadhead, the appellant confessed that he murdered Comrie by striking him about the head and upper torso with a blunt instrument.

On July 29, 1966, the appellant, as an indigent, executed a verified petition requesting the appointment of an attorney to aid in his defense, and on that same day the district court appointed counsel.

The appellant was sent to the Nevada State Hospital at Sparks, Nevada on October 26, 1966, and on February 22, 1967, he was returned to Elko County where he was arraigned on the charge of murder, to which he pled "not guilty."

After a trial, the jury, on April 1, 1967, returned a verdict of guilty of second degree murder, and on May 1, 1967, after a motion for a new trial was denied, the trial court entered a judgment sentencing the appellant to the Nevada State Prison for a term of not less than ten years and up to and including life. This appeal is taken from that judgment.

As his assignments of error, the appellant contends:

(1) That the trial court violated the appellant's constitutional rights by admitting into evidence the appellant's confession of July 28, 1966, because the warnings required in the case of Miranda v. Arizona, 384 U.S. 436 (1966) were not timely and adequately given.

(2) That substantial evidence indicated the appellant to be insane, and the trial court erred in accepting a jury verdict finding the appellant guilty of second degree murder.

(3) That the trial court failed to rule on the appellant's capacity to waive his constitutional rights.

(4) That the trial court failed to rule on the voluntariness and competence of the appellant's confession given July 28, 1966.

One of the appellant's attacks, upon the validity of his confession of July 28, 1966, is that the *Miranda* warnings were not timely and properly given to him on July 10, 1966. We do not agree with this contention.

While the record is silent as to whether or not the appellant was given the *Miranda* warnings prior to 9:25 a.m., July 10, 1966, it does, however, indicate that there was no meaningful interrogation directed towards the appellant before that time, and although some questions may have been asked of the appellant at the scene of the crime, he was then being detained only as a material witness. On July 10, 1966, the appellant was not in the accusatory spotlight and the record is silent as to what the appellant said, if anything, from the moment of his apprehension until 9:25 a.m., July 10, 1966. Nothing said or done by the appellant prior to the time he received the *Miranda* warnings was used at the trial, nor is it alleged to have lead to the discovery of any other evidence. If the *Miranda* warnings were not given to the appellant before 9:25 a.m., July 10, 1966, any resulting error was harmless even under the rigid standards of harmless error as enunciated in Fahy v. Connecticut, 375 U.S. 85 (1963), and as clarified in Chapman v. California, 386 U.S. 18 (1967). See Guyette v. State, 84 Nev. 160, 438 P.2d 244 (1968).

We find that the warnings given the appellant at 9:25 a.m., July 10, 1966, in the office of the district attorney, and also the warnings given the appellant on July 28, 1966, by William Broadhead, met the requirements of Miranda v. Arizona, supra. While the warnings given in the district attorney's office did not specifically advise the appellant that he was entitled to have an attorney present at that moment and during all stages of interrogation, no other reasonable inference could be drawn from the warnings as given.

In Tucker v. United States, 375 F.2d 363 (1967), it is said: "* * * the Supreme Court did not prescribe an exact format or postulate the precise language that must be used in advising a suspect of his constitutional right to remain silent * * *. In resolving the question in light of the *Miranda* standards, the substance and not the form of the warnings should be of primary importance."

This court on many occasions in the past has applied the McNaghten test of insanity and we again subscribe to the doctrine originally announced in State v. Lewis, 20 Nev. 333, 22 P. 241 (1889), when the court said: (1) "The accused is presumed to be sane until the contrary is shown." (2) "Insanity is an affirmative proposition, and the burden of proving it is upon the defense." (3) "Insanity, as a defense to crime, must be

established by a preponderance of the evidence." (4) "If the defendant have capacity and reason sufficient to enable him to distinguish right from wrong as to the particular act in question, and has knowledge and consciousness that the act he is doing is wrong and will deserve punishment, he is, in the eye of the law, of sound mind and memory, and should be held responsible for his acts." This standard has been followed in State v. Hartley, 22 Nev. 342, 40 P. 372 (1895); Fox v. State, 73 Nev. 241, 316 P.2d 924 (1957); Sollars v. State, 73 Nev. 248, 316 P.2d 917 (1957); Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964), and Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965).

In the case of State v. Hartley, supra, this court said: "It is not sufficient that insanity may exist in the realm of imagination. The rules governing in cases where the defense of insanity is interposed are well established * * *. It requires pertinent, competent and satisfactory evidence to establish insanity as in any other alleged fact in the case."

The appellant's father, Mack Criswell, who was called as a witness on the question of the appellant's sanity, was allowed considerable latitude in his testimony about the conduct of the appellant. He told a number of rambling stories of the peculiar behavior of his son, including one story of rather recent vintage, when the appellant, who was then employed as a bus driver, left his passenger filled bus in the middle of the road, in a remote area, with advice to the passengers that they could do what they pleased about getting to their destination. The elder Criswell emphatically stated that he believed his son was insane at the time he killed Comrie, as well as before and since that unfortunate event.

To rebut the allegation of insanity and the appellant's contention that he did not know right from wrong on July 9, 1966, the state called Edward F. Lunford, Justice of the Peace of Elko Township, and recalled William Broadhead and Hubert Borjas. All three related their factual observations of the appellant and testified that he appeared to be sane.

During the trial, a clinical psychologist and two psychiatrists testified that they had examined the appellant after October 26, 1966, and before the trial, and found him to be a paranoid schizophrenic, of considerable duration, or as otherwise stated, suffering from schizophrenic reaction, paranoid type of long standing, but the two psychiatrists admitted that they could not say with any absolute degree of certainty whether or not the appellant knew right from wrong on July 9, 1966, when the murders were committed, nor did they categorically state that the appellant was unable to knowingly and intelligently waive

his right to counsel, and his right to remain silent on July 28, 1966, when he made his confession to William Broadhead.

The clinical psychologist stated that in his opinion the appellant did not know right from wrong at the time Comrie was murdered, but on cross examination when asked by the district attorney, "Are there also times then, Doctor, that he would be able to distinguish right from wrong and know the consequence of his actions." The doctor's answer was, "Yes, yes, I would say that. Yes."

A lay witness can give his opinion as to the sanity or insanity of a defendant, and the weight accorded his testimony is a question for the jury to determine. State v. Lewis, supra.

In the case of State v. Butner, 67 Nev. 436, 220 P.2d 631, (1950), this court said: "In this state and in virtually every other jurisdiction in the United States a lay witness (1) having had adequate opportunity for observation, may (2) after stating the facts, (3) give his opinion as to the sanity or insanity of the person involved, whereupon (4) the weight to be given to his testimony is a matter for the jury's determination." See also Kimble v. First National Bank of Nevada, 73 Nev. 25, 307 P.2d 615 (1957); Sollars v. State, 73 Nev. 248, 316 P.2d 917 (1957).

Here the final determination of the appellant's sanity or insanity, at the moment the crime was committed, rested with the trial jury. They found him to be sane. If the determination of the guilt or innocence, or the life or death of a defendant is to be entrusted to a jury, then they most certainly can be entrusted with the determination of a defendant's sanity or insanity. In furtherance of our scheme of jurisprudence this must be so.

NRS 175.445[1] indicates that the public policy of this state as laid down by the legislature proclaims that the question of the sanity or insanity of a defendant is within the exclusive province of the jury.

In the case of State v. Lewis, supra, this court is again quoted as saying: "The real question to be determined by the jury was as to appellant's sanity or insanity at the time of the homicide. The testimony as to the condition of his mind at times previous and subsequent thereto is admissible solely upon

---

[1]NRS 175.521. "Where on a trial a defense of insanity is interposed by the defendant and he is acquitted by reason of that defense, the finding of the jury shall have the same force and effect as if he were regularly adjudged insane as now provided by law, and the judge thereupon shall forthwith order that the defendant be confined in the Nevada state hospital until he be regularly discharged therefrom in accordance with law."

the ground that it tends to show the mental condition at the time of the homicide." Lyles v. United States, 254 F.2d 725 (D.C.Cir. 1957).

Sound legal principles dictate that a jury verdict will not be reversed where there is any substantial evidence to support it. These principles must not only be applied to the questions of guilt and innocence but also to the questions of sanity and insanity. State v. Huff, 11 Nev. 17 (1876); State v. Mills, 12 Nev. 403 (1877); State v. Crozier, 12 Nev. 300 (1877); State v. Ah Kung, 17 Nev. 361 (1883); State v. Wong Fun, 22 Nev. 336 (1895); State v. Scott, 37 Nev. 412, 142 P. 1053 (1914); State v. Watts, 53 Nev. 200, 296 P. 26 (1931); State v. McKay, 63 Nev. 118, 165 P.2d 389 (1946); State v. Fitch, 65 Nev. 668, 200 P.2d 991 (1948); Martinez v. State, 77 Nev. 184, 360 P.2d 836 (1961).

The appellant next contends that the trial court erred when it failed to conduct an evidentiary hearing and specifically rule on the question of the voluntariness of the appellant's confession given on July 28, 1966, and the question whether the appellant, at that time, intelligently and competently waived his constitutional rights to counsel and to remain silent.

In this case, it is apparent that the questions of the appellant's intelligent and competent waiver of his constitutional rights and the voluntariness of his confession are so inextricably entwined that they must be considered together.

Jackson v. Denno, 378 U.S. 368 (1964), laid down a constitutional rule that a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given. The judge must first make the primary determination of voluntariness at a hearing conducted for that purpose, and his conclusion that the confession is voluntary must "appear from the record with unmistakable clarity." Sims v. Georgia, 385 U.S. 538 (1967) and 389 U.S. 404 (1967). This doctrine rests upon the due process clause of the Fourteenth Amendment, is basic to a fair trial, and is given retroactive application. McNerlin v. Denno, 378 U.S. 575 (1964); 324 F.2d 46 (1963). Consequently, there is no room at all for the doctrine of harmless error. [Cf. Guyette v. State, supra; concerning a procedural safeguard which has not been given retroactive application.]

Such a hearing did not occur in this case, the alleged confession of July 28, 1966, was received in evidence before the jury without the court first having conducted a hearing with

respect to voluntariness.[2] In accordance with the mandate of Jackson v. Denno, supra, this case must be remanded to the district court for an evidentiary hearing as to whether the appellant intelligently and competently waived his constitutional rights, and whether the confession of July 28, 1966 was voluntarily given.

If the court decides that the appellant's waiver was not intelligently and competently given, and his confession was involuntary, there must be a new trial on the question of guilt or innocence without the confession being received in evidence. On the other hand, if the waiver is found to have been intelligently and competently given, and the confession is found to be voluntary, the conviction will stand affirmed since the other assigned errors are without substance. The evidentiary hearing must be held within a reasonable time.

THOMPSON, C. J., COLLINS, ZENOFF, and MOWBRAY, JJ., concur.

---

[2]The prosecutor made an "offer of proof" in the absence of the jury. This is not a hearing within the meaning of Jackson v. Denno, supra, since the trial judge cannot test credibility and weigh evidence.