## TERRY LEE CUTLER, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 8658

June 29, 1977                              566 P.2d 809

*Rodlin Goff,* State Public Defender, Carson City, for Appellant.

*Robert List,* Attorney General, *Patrick B. Walsh,* Deputy Attorney General, Carson City, and *Rupert C. Schneider,* District Attorney, White Pine County, for Respondent.

## OPINION

By the Court, BATJER, C. J.:

Appellant challenges his conviction for first degree murder. On June 11, 1974, Terry Lee Cutler was discharged from the Army at Fort Riley, Kansas. During the discharge process Cutler met Michael Bowman and the two decided to hitchhike to Ely, Nevada. Ten days later they reached Ely and met April Boettcher, Dianna McCaslin and Dale Robert Kaze.

The five partied for a few days and on July 1, 1974, found themselves at the Kaze trailer. Upon information from Kaze's sister-in-law that two runaway girls were in the trailer, a juvenile probation officer was dispatched to watch it. The officer saw Kaze's car leave with Cutler and Bowman in it, but believed the two girls were still in the trailer. He radioed for help and when it arrived they entered the trailer. Kaze was found tied up, under a bed, with bruises on his neck. He was rushed to a hospital where he died a few days later. Medical testimony established that strangulation which lead to pneumonia caused his death.

Cutler, Bowman, and the two girls were apprehended later that evening while traveling in Kaze's car. The two girls testified that first Bowman held Kaze down by the throat and after a few minutes Cutler held Kaze down while Bowman smoked a cigarette.

1. Appellant's claim of error in the admission of several photographs of the victim taken both before and after the fatal injuries is specious and completely without merit. The photographs were admitted to show the injuries, explain the cause of death and establish the size of the victim. Examination of these photographs reveals nothing gruesome or inflammatory which could have excited or prejudiced the jury. State v. Gambetta, 66 Nev. 317, 208 P.2d 1059 (1949). *See* Allen v. State, 91 Nev. 78, 530 P.2d 1195 (1975); Ricci v. State, 91 Nev. 373, 536 P.2d 79 (1975).

2. Appellant next objects to the admission of testimony by Dianna McCaslin concerning a conversation the group had in

which the participants discussed whether Kaze would take them to California, and Bowman, referring to Kaze, told appellant "We are going to get rid of him." The prosecution had the right to offer evidence tending to prove motive, malice or intent. This testimony was clearly admissible for that purpose. State v. Larkin, 11 Nev. 314 (1876); State v. White, 52 Nev. 235, 285 Pac. 503 (1930); State v. Plunkett, 62 Nev. 258, 142 P.2d 893 (1944); *cf.* Bails v. State, 92 Nev. 95, 545 P.2d 1155 (1976).

3. Appellant contends error was committed in allowing the prosecution to impeach Kathy Lerch by use of a juvenile adjudication. NRS 50.095(4).[1] Kathy was called as a defense witness and was questioned extensively by defense counsel about her juvenile record. On cross-examination she was asked whether, as one of the conditions of probation, she was precluded from associating with Laurie Cutler, appellant's sister. Kathy answered that she did not know Laurie at that time. The prosecution then offered a copy of the "Order placing Minor on Probation" which provided, as one of the conditions of probation, that she was not to associate with Laurie Cutler. The order was offered to show that Kathy had falsely testified. In deciding a similar contention this Court in Rhodes v. State, 91 Nev. 720, 723, 542 P.2d 196 (1975), said: "It is true that NRS 50.095, subsection 4, provides that evidence of juvenile adjudications is not admissible for the purpose of attacking the credibility of a witness. However, the statute was never intended to aid and abet perjury and, as with most statutes, is subject to the doctrine of invited error. See People v. Simmons, 172 P.2d 18 (Cal. 1946)." When a defendant voluntarily opens the juvenile record of his witness to the jury, and that witness testifies untruthfully, appellant may not claim error on appeal when the juvenile record is used to reveal such false testimony. *See* Davis v. Alaska, 415 U.S. 308 (1974); *cf.* Harris v. New York, 401 U.S. 222 (1971). See also Walder v. United States, 347 U.S. 62 (1954). Under the factual posture of this case, the court did not err in admitting the "Order Placing Minor on Probation."

4. The appellant further claims that the verdict is unsupported by the evidence because McCaslin and Boettcher were accomplices and their testimony was not corroborated.

---

[1]NRS 50.095(4): "Evidence of juvenile adjudications is inadmissible under this section."

An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial in the case in which the testimony of the accomplice is given. NRS 175.291(2).[2] Upon a trial of the case the jury is the judge of the credibility of the witnesses, and the question of whether or not the witness was in fact an accomplice can be submitted to the jury upon proper instructions. In Re Bowman and Best, 38 Nev. 484, 151 P. 517 (1915). Here the trial court properly instructed the jury on the credibility of the girls' testimony, the law regarding accomplices, and the necessity of corroboration of accomplice testimony, and submitted to the jury the question of whether McCaslin and Boettcher were accomplices. Upon all the evidence appellant was found guilty.

[Headnote 9]

There was a substantial amount of other evidence which in itself tended to connect the appellant with the offense. NRS 175.291(1): State v. Hilbish, 59 Nev. 469, 97 P.2d 435 (1940); LaPena v. Sheriff. 91 Nev. 692, 541 P.2d 907 (1975).[3] The testimony of McCaslin and Boettcher was properly admitted.

5. In a second supplemental brief filed by appellant in *pro per* he claims the trial court erred in refusing to give certain offered instructions, denying a change of venue, and refusing to conduct an evidentiary hearing to determine appellant's sanity and competency to stand trial. He further claims that he was denied the effective assistance of counsel, that the prosecutor made prejudicial remarks during the closing argument and that the statutory definitions of reasonable doubt (NRS 175.211) and implied malice (NRS 200.020(2)) are unconstitutional.

Appellant's only basis for claiming insanity and incompetency to stand trial was his testimony that he had "blacked out" on two occasions while in the military service because of

---

[2]NRS 175.291(2): "An accomplice is hereby defined as one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

[3]In an appeal from the denial of a petition for habeas corpus, from an order binding him over for trial after a preliminary hearing in an unpublished order, we rejected appellant's contention that April Boettcher and Dianna McCaslin were accomplices and held that their testimony need not be corroborated.

the use of drugs. After he was examined by two doctors who reported that he was mentally and physically fit to stand trial, his attorney and the prosecutor stipulated "That Plaintiff's and Defendant's medical reports in relation to the Defendant, TERRY LEE CUTLER, indicate the absence of any medical infirmity which would indicate a present inability to stand trial or assist counsel in his defense.

"That this court may proceed to set this matter for trial WITHOUT conducting an evidentiary hearing on the issue of Defendant's competence to stand trial.

"That Defendant, TERRY LEE CUTLER, hereby waives any and all procedural and substantive rights to such an evidentiary hearing and, through counsel requests that this matter be set for trial."

The instructions offered by appellant were either substantially covered by other instructions, Collins v. State, 88 Nev. 168, 494 P.2d 956 (1972), or they misstated the law applicable to the facts and were properly refused by the trial court.

NRS 174.455 allows for change of venue when: "After the *voir dire* examination has been conducted and it is apparent to the court that a selection of a fair and impartial jury cannot be had in the county where the indictment, information or complaint is pending." A motion for a change of venue is within the trial court's discretion. State v. Casey, 34 Nev. 154, 117 Pac. 5 (1911), cited, State v. Fouquette, 67 Nev. 505, at 517, 221 P.2d 404 (1950); State v. Alsup, 69 Nev. 121, at 124, 243 P.2d 256 (1952). A reading of the record indicates that an impartial jury was selected and the trial judge did not abuse his discretion in denying appellant's motion for a change of venue.

Appellant's claim that certain of the prosecutor's remarks during closing argument were prejudicial and violated his rights to a fair trial and due process are without merit and patently frivolous, furthermore, defense counsel made no objection to any of the prosecutor's closing argument. Failure to object to remarks at the time they are made precludes their consideration on appeal. Hayden v. State, 91 Nev. 474, 538 P.2d 583 (1975); Bonnenfant v. State, 86 Nev. 393, 469 P.2d 401 (1970); Cook v. State, 77 Nev. 83, 359 P.2d 483 (1961).

Appellant argues that his counsel was ineffective and inadequate because he was (1) unsuccessful in obtaining a change of venue, (2) failed to make objections during closing argument, and (3) waived a sanity hearing. It is presumed that an attorney has fully discharged his duties. This presumption can be overcome by strong and convincing proof to the contrary. This record does not contain evidence of incompetency upon the part of the appellant's trial counsel. Smithart v. State, 86 Nev. 925, 478 P.2d 576 (1970).

Appellant contends that Nevada's statute on implied malice, NRS 200.020(2), given in the form of a jury instruction is unconstitutional in its application because it relieves the prosecution of the burden of proving every element of the crime and thus deprives appellant of due process. We need not reach this contention. In returning a verdict of murder in the first degree the jury was required to find, beyond a reasonable doubt, that appellant deliberately, willfully and with premeditation murdered Dale Robert Kaze. Implied malice played no part in this case inasmuch as those elements of the crime of murder in the first degree conclusively established express malice as defined in NRS 200.020(1). Scott v. State, 92 Nev. 552, 554 P.2d 735 (1976).

Finally, appellant contends that the jury instruction given on the definition of the term "reasonable doubt," in the language of NRS 175.211(1)[4] is unconstitutional and violated his right to a fair trial and due process. The contention is also without merit.

Ever since the legislature first enacted ch. 21, Stats. 1889, which has been carried forward into NRS 175.211(1), this court has approved the giving of that statute as an instruction to the jury in a criminal case. State v. Potts, 20 Nev. 389, 22 Pac. 754 (1889); State v. Economy, 61 Nev. 394, 130 P.2d

---

[4]NRS 175.211(1): "A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, nor mere possibility or speculation."

264 (1942). The statutory instruction required to be given by the trial court did not dilute the state's burden to establish guilt beyond reasonable doubt and does not shift the burden of proof as appellant contends. Furthermore, there was no objection at trial by appellant to the instruction. Where, as here, the giving of an instruction to the jury does not constitute plain error, the failure to object precludes appellate consideration. McCall v. State, 91 Nev. 556, 540 P.2d 95 (1975). There is substantial evidence in the record to support the jury's verdict of guilty.

The judgment of conviction is affirmed.

MOWBRAY, THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.