KENNETH OGDEN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 10706

March 11, 1980                                         607 P.2d 576

*Morgan D. Harris,* Clark County Public Defender, and *Terrence M. Jackson,* Deputy Public Defender, Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *Valerie Stewart,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from a judgment convicting Ogden of first degree murder resulting in appellant's being sentenced to a term of life with the possibility of parole. Appellant contends the trial court erred (1) in instructing the jury that a person capable of knowing right from wrong must be regarded as capable of entertaining intent and of deliberating and premeditating; (2) by failing adequately to instruct the jury regarding premeditation and deliberation; (3) in admitting appellant's statements made during police interrogation; (4) in refusing to instruct concerning certain factors to be considered in determining voluntariness; and (5) in refusing defense instructions on reasonable doubt as to degrees of murder. We now turn to consider these questions.

On February 29, 1976, at approximately 6:30 p.m., Joseph Poplaski was found dead in a cottage he was remodeling. The autopsy subsequently performed revealed that the death was caused by two gunshot wounds through the back of the head with a .25 caliber weapon fired at point blank range and less than a second apart.

Appellant, who was nineteen at the time of the incident, had worked with the victim for about a week prior to the occurrence. Appellant's usual duties consisted of pumping gas at Poplaski's gas station; however, appellant and Poplaski were working on the cottage on the day of the incident. The Poplaskis lived in a trailer next to the cottage and gas station. The victim, his wife and the appellant had returned from buying

remodeling supplies at approximately 1:00 p.m. that after-noon, after which Mrs. Poplaski went into the trailer to sleep while the appellant and her husband began work in the cottage. Mrs. Poplaski testified that she fell asleep and was awakened by appellant who made several requests. Mrs. Poplaski finally woke up at approximately 4:00 p.m. and began looking for her husband. When she was unable to find him, she called a friend who subsequently discovered the body in the locked cottage. Appellant's whereabouts were unknown.

There was no evidence of a struggle at the scene. The victim's .25 caliber pistol, which was subsequently identified as the mur-der weapon, was found at the scene. Of the two safes in the victim's gas station, one was found open and empty. The fin-gerprints taken from the cash tray located in a refrigerator in the station, were later matched to fingerprints of the appellant. The victim's wallet was found behind the gas station under a tarpaulin several days after the incident.

On March 4, 1976, Detective Lee Barlow of the Las Vegas Metropolitan Police Department, interviewed appellant in Canada where the detectives had located him. On the first day of the interview, at approximately 3:00 p.m., appellant initially denied involvement in the killing, but later stated that it could have been self-defense. The interview that day ended at approximately 6:00 p.m. On the following day, appellant again returned to talk to the detectives and made a taped statement in which he admitted shooting the victim and taking money to pay for his trip back to Canada. Appellant also told the detectives where the previously undiscovered wallet could be found. Bar-low testified that prior to each of the two interviews, appellant was advised of his *Miranda* rights.

*1. The Instruction on Criminal Capacity.*

Jury Instruction Number 12 stated, "You are instructed that a person with a mind capable of knowing right from wrong *must be regarded as capable* of entertaining intent and of delib-erating and premeditating." (Emphasis added.) Appellant argues that this instruction created a presumption which had the effect of improperly shifting the burden of proof to the defense as to deliberation and premeditation, thereby being violative of the due process clause of the fourteenth amend-ment as well as of NRS 47.230(2). We disagree.

In Pinana v. State, 76 Nev. 274, 287, 352 P.2d 824, 831 (1960), we held that such language embodied in a jury instruc-tion was a correct statement of the law. *See also* Criswell v. State, 84 Nev. 459, 443 P.2d 552 (1968). Here, appellant did

not interpose the defense of insanity, but instead presented evidence of his asserted condition of depression immediately preceding the homicide. This court has rejected the doctrine of partial responsibility or diminished capacity. *See* Fox v. State, 73 Nev. 241, 244, 316 P.2d 924, 926 (1957). We are unpersuaded by appellant's argument and decline to depart from the right-and-wrong test which we have applied since State v. Lewis, 20 Nev. 333, 351, 22 P. 241, 247–48 (1889).

The instruction in the instant case did not advise the jurors that if they found the defendant knew right from wrong, they must find he *did* entertain intent or did deliberate and premeditate. The instruction merely stated that the defendant was *capable* of such. *See* Geary v. State, 91 Nev. 784, 792–93, 544 P.2d 417, 423 (1975). Although we believe this instruction was not essential to the case, and, indeed, is undesirable in the context of this case, we disagree that the reading of this instruction constituted error.

Finally, this instruction did not shift the burden to appellant as the jury was fully informed by court admonitions, instructions, and argument of counsel, that the state had the burden of proving every element of the crime beyond a reasonable doubt. *See* Pinana v. State, 76 Nev. at 287, 352 P.2d at 831; *see also In re* Winship, 397 U.S. 358, 364 (1970). The instruction reserved to the jury full discretion to determine whether appellant entertained the necessary intent, deliberation and premeditation. The challenged instruction does not improperly shift the burden of persuasion from the state to the defendant and did comport with due process, as well as state law. *Cf.* Mullaney v. Wilbur, 421 U.S. 684, 703 (1975) (Maine murder statute unconstitutionally required defendant to rebut statutory presumption that he committed murder with "malice aforethought" by proving that he acted in the heat of passion on sudden provocation).

*2. Premeditation and Deliberation Defined.*

Jury Instruction Number 11 generally described the time lapse necessary to form malice aforethought prior to a killing. The instruction stated that it was "only necessary that the act of killing be preceded by and be the result of a concurrence of will, deliberation and premeditation on the part of the slayer, . . . ." Appellant contends that the instruction is incomprehensible to jurors as it fails to define premeditation and deliberation. He then argues that this deficiency, coupled with the

rejection of his proffered instructions, mandates reversal. There is no merit to this claim.

This instruction is identical to one previously upheld by this court. Scott v. State, 92 Nev. 552, 554 n.2, 554 P.2d 735, 737 n.2 (1976); *see also* State v. Fisko, 58 Nev. 65, 80, 70 P.2d 1113, 1118 (1937). In *Scott,* however, the appellant did not contend that the instruction was an inadequate definition of premeditation and deliberation. The unsuccessful challenge was that the instruction failed to distinguish between first and second degree murder.

In People v. Anderson, 447 P.2d 942 (Cal. 1968), the court recognized that the California Legislature did not intend "to give the words 'deliberate' and 'premeditated' other than their ordinary dictionary meanings." *Id.* at 948. In the instant case, other instructions given carefully differentiated first from second degree murder and counsel for both sides argued the lack of or presence of these distinguishing factors of premeditation and deliberation in their closing arguments. There is nothing to indicate that such words are used in law other than in their ordinary sense. Although appellant's instructions would have expanded on the meaning of those terms, the law is substantially encompassed in the instructions given. Kelso v. State, 95 Nev. 37, 44, 588 P.2d 1035, 1040 (1979); Geary v. State, 91 Nev. at 793, 544 P.2d at 423. Finally, the state did show the bases for finding premeditation and deliberation from the fact that appellant removed the victim's gun from the service station, carried it in his sock for an appreciable period of time during which he worked along side of the victim, was short of money, and had a motive for robbery, had an immediate desire to return to Canada and shot the victim twice while the victim was facing a wall installing paneling.

*3. The Confession.*

During the second day of interviewing appellant in Canada, Las Vegas police conducted a polygraph examination on appellant which lasted about one and one-half hours. Following this, appellant was again advised of his *Miranda* rights and stated during a ten minute interview that he shot the victim in the back of the head for purposes of robbery. Appellant contends that the state failed to meet its burden that these statements were voluntary in that appellant had a low I.Q., was easily intimidated, and was psychologically coerced. We cannot agree.

The state has the burden of showing the waiver of fifth amendment rights by a preponderance of the evidence. Brimmage v. State, 93 Nev. 434, 438, 567 P.2d 54, 57 (1977). The

trial court first heard evidence on the voluntariness issue before finding that the confession was given voluntarily. The evidence was then submitted to the jury which was instructed to make a specific finding on the issue. This was in accordance with Nevada law. Carlson v. State, 84 Nev. 534, 536, 445 P.2d 157, 159 (1968). The record shows that Ogden was permitted to go home after the first day's interview; that appellant returned the following day; that the interviews were of reasonable duration and conducted in a reasonable and non-coercive atmosphere; and that appellant waived his relevant rights, indicating that he understood the import of the waiver. The record shows that appellant was told he was not under arrest and he understood that he would not be taken back to the United States at that time by the Las Vegas detectives. Defendant was not compelled to talk to the officers and returned on his own the second day. There was substantial evidence in the record to support the determination of the trial judge and the finding by the jury. *See* Deutscher v. State, 95 Nev. 669, 601 P.2d 407 (1979); Paulette v. State, 92 Nev. 71, 545 P.2d 205 (1976).

*4.   Voluntariness.*

Appellant asks this court to reconsider its holding in Carlson v. State, 84 Nev. at 536, 445 P.2d at 159. There we approved the same instruction as was given in this case and said that the term "voluntary" carries a clear meaning with no need for further explanation. We find the instruction legally sufficient.

*5.   Appellant's Proposed Instruction E.*

Appellant next contends that his instruction, which comports with NRS 175.201, should have been given and that the trial court's failure to do so constitutes reversible error.[1] NRS 175.201 provides in part: ". . . and when an offense has been proved against him, and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest."

The reasonable doubt instruction given in this case was taken verbatim from NRS 175.211(1).[2] This court and the legislature

---

[1] Proposed Instruction E provided:

> If you are convinced beyond a reasonable doubt that the crime of murder has been committed by a defendant, but you have a reasonable doubt whether such murder was of the first or of the second degree, you must give to such defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree.

[2] NRS 175.211 provides:

> 1.   A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they

have said that no other definition of reasonable doubt shall be given. Cutler v. State, 93 Nev. 329, 336, 566 P.2d 809, 813 (1977); NRS 175.211(2). But appellant's instruction assumed that the jury found proof of murder beyond a reasonable doubt. The proffered instruction, informed the jury to find a second degree murder if it entertained a reasonable doubt as to which degree had been proven.

In California, an instruction based on a statute similar to our NRS 175.201 is required if other instructions do not adequately cover the law. People v. Morse, 388 P.2d 33, 49 (Cal. 1964). *See* Geary v. State, 91 Nev. at 793, 544 P.2d at 423 (1975); *see also* Carey v. State, 429 P.2d 836, 841 (Idaho 1967); State v. Stationak, 440 P.2d 457, 460 n.4, 461 (Wash. 1968). The principle embodied in the rejected instruction represents the weight of authority in this country, as well as our statutory law. *See* Annot. 20 A.L.R. 1258–59 (1922).

The distinguishing feature between first and second degree murder is the presence or absence of premeditation and deliberation. The defense argued that proof of these elements was lacking and that had his instructions been given, he would probably have been convicted only of second degree murder. Here, however, statutory instructions on reasonable doubt were given, as were instructions on the presumption of innocence, intent, and the distinctions between first and second degree murder. Notwithstanding the reading of these instructions, we find that it is error not to give the instruction. In the context of this case, however, the failure does not require reversal since consideration of the entire record indicates neither a miscarriage of justice, nor prejudice to appellant's substantial rights. *See* State v. Fitch, 65 Nev. 668, 691–93, 200 P.2d 991, 1003–04 (1948); NRS 177.255; 178.598; 47.040(1)(b). Moreover, the evidence can easily be read to exclude a theory of guilt on the lesser offense of second degree murder. State v. Trujillo, 590 P.2d 1027, 1030–31 (Kan. 1979). The evidence proving each element of first degree murder is truly overwhelming, Abram v. State, 95 Nev. 352, 594 P.2d 1143 (1979); Coffman v. State, 93 Nev. 32, 559 P.2d 828 (1977), and we conclude that the error in failure to give the statutory instruction was harmless beyond a reasonable doubt. *See* Chapman v.

---

can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, not mere possibility or speculation.

2. No other definition of reasonable doubt shall be given by the court to juries in criminal actions in this state.

California, 386 U.S. 18, 20 (1967). There is substantial evidence from which the jury could have found premeditated homicide. This includes, for example, appellant's careful planning of the robbery and homicide, his carrying of the victim's pistol for a time preceding the killing, the locking of the cottage doors and the execution style of the slaying and deliberateness of the plan.

We summarily reject appellant's remaining assignments of error and we affirm the judgment of the lower court.

MOWBRAY, C. J., and THOMPSON, J., concur.

BATJER, J., concurring:

I agree that the judgment of the district court must be affirmed; however, in reaching that conclusion, I do not agree that the district court committed error in refusing to give appellant's proposed instruction "E" to the effect that if there exists a reasonable doubt as to which of two or more degrees an accused is guilty, he shall be convicted of the lowest. NRS 175.201.[1]

The district court has an affirmative duty to give such an instruction, but only when it is required by the evidence and when there exists a reasonable doubt as to the degree of the crime. State v. Masqua, 502 P.2d 728 (Kan. 1972).

Here there is overwhelming evidence to support a conviction of murder in the first degree. To have given instruction "E", requested by appellant on the lesser offense in view of the facts of this case, would have permitted the jury to speculate on a degree of homicide.

On the record and all of the instructions given by the district court taken and read together as a whole, I believe the jury was properly instructed.

GUNDERSON, J., concurring:

I concur in the result.

---

[1]NRS 175.201:

Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt; and when an offense had been proved against him, and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest.