HARVEY YOUNG, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 15119

May 29, 1987                               737 P.2d 512

*Martin H. Wiener,* Reno, for Appellant.

*Brian McKay, Attorney General, Carson City; Mills Lane,*
District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

On June 27, 1982, Katherine Carlson was murdered in her home in Reno. Her lifeless body revealed that she had been brutally stabbed over thirty-eight times in her thorax, abdomen and extremities. At the time of her death, Katherine carried a viable fetus of approximately eight months; the fetus died of anoxia as a result of its mother's demise. Jewelry, a camera, approximately $500 in cash and weapons were taken from the home.

During the course of the investigation, suspicion ultimately focused on the trio of Cary Williams, Charles Wilkinson and appellant Harvey Young. Williams eventually confessed and was convicted of first-degree murder and sentenced to death in a separate proceeding.

Young's knowledge of the items removed from the Carlson home led detectives to question him about the source of his information. As a result, Young confessed that the trio met in Williams' house on the night of the murder, then walked to the victim's home, where Wilkinson pried open the rear door and the two of them followed Williams inside the house. Young also said that he ran from the house when he saw Williams stabbing Carlson. In discussing the extent of his involvement, Young first indicated that he went to the Carlson home intent on committing a burglary. Later, he denied any criminal intent, stating that his purpose in going to the Carlsons' was to attend a party.

Trial evidence revealed that Young was mildly retarded, functioning at the level of a nine-year-old child; his score on the Wechsler Adult Intelligence test placed him in the bottom two percent of society.

Young was convicted of murder, fetal manslaughter and burglary. He received a sentence of life without the possibility of

parole and two consecutive ten-year prison terms for the fetal manslaughter and burglary. Young raises numerous allegations of error in both the guilt and penalty phases of his trial. As to the former, all issues are without merit; prejudicial error occurred in the penalty phase, however, which mandates modification of Young's sentence.

Young contends that the lower court ruling that it was permissible for the State to seek the death penalty tainted the jury selection because the death penalty was not an available option. The posture of the case when trial commenced provided ample basis for such a ruling. The court did not err in death-qualifying the jury based upon the facts available.

Young argues that denial of his motion to sever resulted in an improper reduction of his total peremptory challenges. However, Young has failed to show that he was prejudiced in any judicially cognizable manner by the court's refusal to allow him a separate trial. Delimiting peremptory challenges by the number that would otherwise be accorded a single defendant is permissible in a trial of multiple defendants who must join in the challenges. The district court did not err. White v. State, 83 Nev. 293, 429 P.2d 55 (1967).

Young also asserts that the State's failure to preserve the victim's body or samples of tissues surrounding the wounds requires reversal. The argument is without merit. There is no indication that the loss of evidence was the product of bad faith or connivance on the part of the State, or that Young was prejudiced as a result. Thus, reversal is not warranted. Wood v. State, 97 Nev. 363, 632 P.2d 339 (1981).

Reversal is urged because of the allegedly erroneous admission of extrajudicial statements. First, Young invites us to disavow the State's burden to show the waiver of a defendant's Fifth Amendment right against compulsory self-incrimination by mere preponderance of the evidence. We elect to retain our current standard. Moreover, we conclude that Young's confession was voluntary; the determination by the lower court was not erroneous. Young also contends that because of his low intelligent quotient, his statements must be deemed involuntary. We rejected a similar argument in Ogden v. State, 96 Nev. 258, 607 P.2d 576 (1980). Young had eleven years of education as an average student; and he repeatedly indicated to police officers that he understood his rights. He even read a copy of the *Miranda* rights out loud to police officers. He had been informed of those rights many times in his past. There was no error.

Young next claims that the lower court abused its discretion in admitting his blood-stained basketball shoe into evidence. Young had admitted wearing the shoe on the night of the murder. We conclude that the court did not abuse its discretion in ruling that the probative value of the shoe outweighed its prejudicial effect. *See* Seim v. State, 95 Nev. 89, 590 P.2d 1152 (1979).

Young contends that the lower court erred in refusing to instruct the jury to consider whether Young suffered from a mental condition which prevented him from forming specific intent. There is no merit to Young's position. *See* Geary v. State, 91 Nev. 784, 544 P.2d 417 (1975), and Fox v. State, 73 Nev. 241, 316 P.2d 924 (1957).

Young contends that the lower court erred in denying his motion for new trial. The motion was primarily based upon a claim of newly discovered evidence about an alleged accomplice in the murder of Katherine Carlson. Young's affidavit states that he failed to testify at trial about the involvement of an individual named Terrance "Magic" Black out of fear that Black would seek reprisals against his family. According to Young, his knowledge of the stolen items stemmed from Black's description of property that Young could not share in because of running from the house before the completion of the crime. The evidence indicates that Young knew of Black's alleged involvement prior to trial; this is not newly discovered evidence for purposes of granting a new trial. Porter v. State, 94 Nev. 142, 576 P.2d 275 (1978). Furthermore, Young has not presented evidence which would make a different result probable upon retrial. The trial court did not abuse its discretion in refusing to grant Young a new trial. Lightford v. State, 91 Nev. 482, 538 P.2d 585 (1975).

Contrary to Young's next argument, the lower court correctly instructed the jury on the intent necessary to impose the death penalty. The instruction was consistent with both NRS 200.033 and Enmund v. Florida, 458 U.S. 782 (1980).

Young also contends that the lower court erred by instructing on the possibility of clemency. The instruction given in the instant case is identical to the instruction that this court addressed in Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985). In *Petrocelli,* this court stated: "We hold that the instruction regarding the possibility of pardon or parole is relevant to the defendant's sentence." *Id.* at 55, 692 P.2d at 508. The court did not err in giving the instruction in the instant case.

Young's primary contention is that he was prejudiced by the admission of inadmissible hearsay evidence during the penalty phase. He asserts that NRS 175.552 denies due process of law because it permits the admission of hearsay and other inadmissi-

ble evidence in the penalty phase.[1] We recently rejected a similar attack on the constitutionality of NRS 175.552 in Rogers v. State, 101 Nev. 457, 705 P.2d 664 (1985), *cert. denied,* 106 S.Ct. 1099 (1986). However, we note that such information may not be supported solely by impalpable or highly suspect evidence. Silks v. State, 92 Nev. 91, 545 P.2d 1159 (1976).

We conclude that Young's penalty hearing was infected by evidence which must be viewed as impalpable or highly suspect. First, testimony was elicited from an expert witness on gangs in the Los Angeles area. The witness testified that he had seen Young in the company of gang members and wearing a baseball cap associated with a gang. He reported that several other gang members told him Young was a member of a gang. He also indicated that these gang members would do anything, including torture and killing, to exact information about the hiding place of a victim's valuables. This is clearly the type of hearsay that the *Silks* case addressed. The police expert from Los Angeles testified to hearsay evidence that was of a highly dubious and inflammatory nature: that Young was a member of a gang which tortured the victims of its crimes.

Equally suspect was a letter written by Young's cellmate, saying Young had confessed that he himself suggested that each of the three participants in the murder should stab the victim once, so none could "snitch" on the others. The letter also indicated that Young had received money and jewelry for his part in the crime, and that he expressed no remorse for the killing. The prisoner who drafted this letter wanted to be released on his own recognizance in return for his testimony about Young; when his request was denied, he refused to testify. Thus, under *Silks,* this evidence should not have been utilized at the penalty hearing.

---

[1]NRS 175.552 states:

Upon a finding that a defendant is guilty of murder of the first degree, the court shall conduct a separate penalty hearing to determine whether the defendant shall be sentenced to death or to life imprisonment with or without possibility of parole. The hearing shall be conducted in the trial court before the trial jury, or before a panel of three district judges if the trial was without a jury, as soon as practicable. In the hearing, evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible. Evidence may be offered to refute hearsay matters. No evidence which was secured in violation of the Constitution of the United States or the constitution of the State of Nevada may be introduced. The state may introduce evidence of additional aggravating circumstances as set forth in NRS 200.033, other than the aggravated nature of the offense itself, only if it has been disclosed to the defendant before the commencement of the penalty hearing.

## Conclusion

We affirm Young's conviction but modify his sentence because highly suspect and prejudicial evidence was admitted in the penalty phase of his trial. Accordingly, Young's sentence is reduced from life without possibility of parole to life with possibility of parole. We conclude that the rest of Young's contentions are without merit.